By the Court—Bosworth, Ch. J,
The opinion in Davis v. Erhardt, that the decree of foreclosure in the chancery suit is void, seems to be based, in part, on the idea that 2 R. S., p. 15, (article second,) prescribes the remedy which Duffie should have pursued, and that such remedy is exclusive, and also partly on the idea that the fact that the civil rights of Davis were suspended at the time the subpoena was served on him, has a bearing upon the question of the validity of the decree. It states that this remedy “ should have been followed in order effectually to have divested the plaintiff of his equity of redemption.”
Article second of title one, chapter 5, part two of the Bevised Statutes, applies as well to a case where a debtor may be imprisoned in a county jail for a criminal offense, for any term more than one year, as to the ease in question ; and as well, therefore, to a debtor whose civil rights are not suspended, as to one whose civil rights are suspended.
If the decree of foreclosure in the chancery suit is void, it cannot be void for the reason that this article of the Bevised Statutes deprived Duffie of the right to foreclose his mortgage, and compelled him to obtain payment of it out of the proceeds of a sale to be made by the trustees as such. By 2 R. S., p. 43, § 7, sub. 7, and 2 R. S., p. 15, § 3, the trustees may either redeem a mortgage, or sell mortgaged property subject to the mortgage. Duffie’s mortgage lien was not impaired by Davis’ guilt or conviction. His right to foreclose was unaffected. And if trustees had been appointed, Davis would have been a necessary party, in order to conclude him personally by the decree. If the mortgage was foreclosed, although trustees had been appointed and made parties, Duffie would be entitled to a *627 decree against Davis personally, in case of a deficiency, for the amount of it. If Duffie could not procure a regular and valid decree to that effect, while Davis was in prison, then it will follow that his conviction not only -■ suspended his civil rights, hut it also suspended his creditors’ rights to obtain judgment in personam, against him.
For no such judgment can be obtained, except by service of process upon him, in such manner as to give a Court jurisdiction of his person.
Trustees could represent Davis only as to his estate, for the purpose of effecting a transfer of the title to his property, and paying his debts. They are not, ex officio, his attorneys to appear and answer suits brought against him, with a view to conclude him personally by the judgments that may be rendered therein, any further than to protect them in appropriating any of his estate that may be necessary to satisfy the debts, and to sell it to make satisfaction.
If these views are correct, then Davis v. Erhardt cannot have been correctly decided, on the ground that the mortgage could not be foreclosed, nor on the idea that service of a subpoena on Davis, while in prison, is void. It can only be upheld on the ground that no valid decree could be made unless trustees of the estate had been appointed and made parties as such, to represent the mortgaged property.
Under such a construction of the statute, the same necessity would exist, if the debtor was in a county jail on conviction of a criminal offense for which he had been sentenced to imprisonment for a longer term than one year. If such a construction is to be upheld, then the fact that the debtor’s civil rights are suspended, is not an element in the decision. And the proposition must be upheld, that a debtor imprisoned in a county jail for a term exceeding one year, cannot be divested of the title to his property by any action that may be brought against *628 him, unless trustees of his estate are first appointed, and they are parties to such action.
The statute in question was part of the Act of March 21, 1801, for “ relief against absconding and absent debtors.” (1 R. L., 157.) Section 29 of that Act provides “ that every person imprisoned in the State prison, other than persons adjudged to imprisonment for life, * * shall be deemed an absconding debtor within this Act,” and also provides for the appointment of trustees of his estate; and that any surplus left, after paying his debts, may be applied to the maintenance of his wife and children, as the Chancellor, or other officers named, shall from time to time allow.
In revising the statutes, this class of cases was provided for in a separate article of five sections. The Eevisers state, that section 29 of the Act of 1801, was enlarged “to embrace the case of persons in county jails or penitentiaries, who seem to be within its reason, and also allowing application by relatives.” The policy of the present law “ undoubtedly is, to have such estates taken care of under legal authority.” (3 R. S., p. 617, 2d ed.)
The five sections composing this article, except the alterations above noted, are in substance the same as § 29 of the Act of 1801. Ho effect is suggested as con tern- ° plated by the alterations made, other than is before stated.
If a mortgagor absconded who had not committed any crime, no one would contend that the statute of 1801, or the existing statute, would make it indispensable to appoint trustees, in order to collect the mortgage debt by a foreclosure of the mortgage. And under the Act of 1801, a person in the State prison was declared to be an absconding debtor, for the purpose of taking the proceedings authorized by it.
The statute as imperatively prescribes the proceedings which it authorizes, as the only remedy against an absconding debtor, as it does against an imprisoned debtor convicted for crime. And it is difficult to perceive in what way the present statute impairs or affects any right *629 of a mortgagee to foreclose the mortgage against such a debtor, without the appointment of trustees, which existed under the Act of 1801.
In Maddock’s Chancery Practice, (vol. 2, p. 200,) Hoffman’s, (vol. 1, p. 109,) and Barbour’s, (vol. 1, pp. 50, 51,) it is stated that service upon the keeper of a prison will be ordered to be good service upon a prisoner in his custody.
The Court of Chancery, in cases not provided for by statute, by settled practice or written rules, exercised the power of declaring what kind of service of a subpoena should be a substitute for personal service, when personal service could not be made, and give jurisdiction of the person.
And the Chancellor, in Phelps v. Phelps, (7 Paige, 150,) decided that service upon a convict in the State prison was regular, the decision being made on an appeal from the order of a Vice-Chancellor.
Davis was not only a proper but he was a necessary party to the foreclosure suit, and he was regularly served with the subpoena according to the settled practice of the Court of Chancery, and an express adjudication of the Chancellor upon the very point.
Chitty, in treating of the meaning and effect of attainder, says: “ That this situation of civiliter mortuus is never allowed to protect him from the claims of private individuals, or the necessities of public justice; so that, though he can bring no action against another, he may be sued and execution may be taken out against Mm.” (Chit. Cr. L., vol. 1, p. 725.)
See Ramsden v. Macdonald, (1 Wilson, 217 ;) Wright v. Simpson, (6 Vesey, 734, 735 ;) Foster’s C. L., 63, and the Chancellor’s opinion in Plainer v. Shenvood, (6 J. Ch. R., 130, 131,)
Harvey v. Jacob, (1 B. & Ald., 159,) and Barrett v. Power, (25 Eng. L. & Eq. R., 524,) show that an action may be prosecuted to judgment, notwithstanding the plaintiff therein may have been convicted of felony after it was *630 commenced. But it does not follow from those cases that it can he so prosecuted solely for his benefit, or that he has any right to bring an action while the term of his sentence is unexpired. (Bullock v. Dodds, 2 B. & Ald., 259-278 ; Bullock, ex parte, 14 Vesey, 465, 466 ; Roberts v. Walker, 1 Russ. & Mylne, 752.)
But the decisions are uniform, that although his right to prosecute an action is suspended and his property is forfeited, he may be sued and the suit against him may be prosecuted to judgment.
The grounds on which I think Davis v. Erhardt is erroneous, are: That article two of the Bevised Statutes, (supra,) does not prescribe an exclusive remedy for these cases, where it authorizes the appointment of trustees of an imprisoned debtor convicted of a criminal offense, (Malcom v. Rogers, 5 Cow., 188 ; Almy v. Harris, 5, J. R., 175,) nor make it essential to a regular and valid decree of foreclosure that trustees of the estate of the debtor should be appointed and made parties to the suit.
That service of the subpoena on Davis was regular, and the estate which he had before his conviction not having been divested by it, the decree, and a regular sale under it, transferred title to the purchaser.
That the statute which suspends his civil rights was passed for his punishment, and not to interpose any obstacle in the way of a creditor’s enforcing a specific lien on his property according to the usual practice of the Court.
If, while an action at law was pending against him, he had been convicted of a State prison offense, and had been in prison under his sentence when judgment was obtained, the judgment would be neither irregular nor void, and his real estate might be sold by virtue of an execution issued upon such judgment.
O'Brien v. Hagan, (1 Duer., 664,) to the effect that conviction and sentence of a plaintiff, abate his action, does not conflict with this view.
In Davis v. Erhardt, according to the opinion of Mr. Justice Campbell, it was decided that the decree of fore *631 closure was void, and that ejectment would lie at the suit of Davis, against Buffie’s grantees of the mortgaged premises. •
As a matter of judicial history relating to these proceedings, it may be observed that Davis subsequently brought ejectment suits against several if not all of such grantees, and judgment was given for the defendants on the ground that assuming the decree to be void, such an action would not lie. Those judgments were pronounced on the authority of Jackson v. Minkler et al., (10 J. R., 480 ;) Jackson v. Bowen, (7 Cow., 13,) and other cases. Those decisions were acquiesced in and the present action was subsequently brought. The history of Davis v. Erhardt, according to Justice Hoffmae’s researches, as stated in his opinions, shows that it was heard at a General Term, held in February, 1854, before Justices Dube, Campbell and Slossoe.
The fact that Judge Dube did not report the decision, I regard as evidence that he came to doubt its accuracy, and not that the omission resulted from his conviction that the decision was unimportant.
If the opinion delivered furnished any evidence that the ease had received that full consideration which these learned Judges were accustomed to bestow, and that their judgment was pronounced after having their attention directed to the views presented on this appeal, I should follow it, on the ground that one General Term should not overrule the decision of another for no other cause than a mere difference of opinion.
But I do not think it can be regarded as such a decision, and if thought to be clearly erroneous, it should not be followed.
The appellant’s Counsel, on the argument of this appeal, presented a certified copy of the minutes of the clerk, on the trial of Davis v. Erhardt, which states that the action was tried before Mr. Justice Campbell “without a Jury,” and “judgment.for the plaintiff by consent of the parties, subject to the opinion of the Court at General Term, and to be heard there in the first instance,” is the *632 clerk’s entry showing how the cause was disposed of at the trial.
The case in Davis v. Erhardt, before the General Term, concludes by stating, “ whereupon, the testimony being closed, and it being conceded by the Counsel of the respective parties, that they desired the Court to pass upon the question put in issue by the pleadings, whether the service of the subpoena in the foreclosure suit, upon the plaintiff, in prison under sentence for a term of years, was good and sufficient to divest him of his property, and to bar and forever foreclose his equity of redemption in the mortgaged premises, a verdict was taken for the plaintiff, subject to the opinion of the Court at General Term.” These papers were furnished, as certified copies of the affidavits in Harvey v. Jacob were furnished on the argument of Barrett v. Power, (25 Eng. L. and Eq., 525,) to show what the case was which was presented to the General Term in Davis v. Erhardt, and how it arose.
They indicate, though not by any means conclusively, that it was not so litigated as to secure that degree of attention which so important a question required. We think the decision should not be allowed to control us, and as we deem it clearly erroneous, a new trial must be granted.
If these views are correct, the questions raised by Duffle and Sherman, as to the statute of limitations, become immaterial. We have, nevertheless, examined those questions, and think that the decision of them presents no ground for reversing the judgment.
Davis’ term of imprisonment expired on the 2d of September, 1846, and he was then discharged. His disability to sue was then removed. On the 28th of August, 1856, he issued to the Sheriff of Hew York a summons in this action, directed to all the defendants, with the intent to have it served. The findings of fact do not state when it was served on either defendant.
The case states as facts, that the summons and complaint was served on the 28th of that month on Jonas Conklin; *633 on the 29th on G. A. 0. Yan Beuren; on the 10th of September, 1856, on O. E. Duffie; and‘that on the 12th of said September, T. Sherman, Jr., voluntarily appeared.
These are the only parties who have appealed. The plea of the statute of limitations as pleaded by Duffie and Sherman is, that the plaintiff’s cause of action accrued on the 9th of September, 1838, when he was free from imprisonment and disability, and that this suit was not commenced within ten years from that date. It is found that he was convicted on the 2d of September, 1839. The bond, the payment of which was secured by the mortgage, was dated the 8th of March, 1838, and was conditioned to pay $1,000 on or before the 8th of March, 1840, with interest semi-annually on the 8th days of September and March in each year, and also provided that if default be made in the payment of interest for ten days after it became payable, the principal should, at the option of Duffie, be due and payable immediately thereafter. He filed his bill to foreclose on the 13th of December, 1839. Giving full effect to his power of election, that is the earliest day that the principal can be said to have become due.
By 2 R. S., 301, § 52, it was enough to prevent the statute of limitations being a bar, that the bill was filed within ten years after the disability of Davis was removed; and followed by diligent efforts made in good faith to serve the subpoena.
When the complaint in this action was filed does not appear. But the case states that it was served on two of the defendants in August, 1856.
The just construction of section 73, [66] of the Oode, to the effect that “this title shall not extend to actions already commenced, or to cases where the right of action has already accrued,” is, -that the time for commencing such actions shall be regulated by pre-existing law, and not be affected by that title. But it does not mean that the provisions of that title as to what shall be the commencement of a suit, shall not apply. The Oode abolished *634 a capias ad respondendum, and a subpoena to appear and answer, and substituted the service of a summons, as a commencement of a suit, for the proceedings previously taken both at law and in equity to effect that result.
A compliance with section 99, [79,] is as effectual to commence an action, as the filing of a bill and issuing of a subpoena within the .ten years, followed with diligent efforts to serve the latter, were, under the Bevised Statutes. In the latter case, the statute would not be a bar, merely because the subpoena could not have been served until a few days after the ten years had expired.
If the decree in the foreclosure suit was utterly void, the judgment in this action should not be reversed, on the mere ground that the statute of limitations is a bar.
For other reasons already stated, the judgment must be reversed and a new trial granted, with costs to abide the event.