HERBERT GREEN, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 23893.)

Court of Claims, September 1, 1936.

*John F. Tomaney,* for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Owen M. Begley* and *Joseph I. Butler, Assistant Attorneys-General,* of counsel], for the defendant.

*Julius Applebaum, amicus curiæ.*

BARRETT, P. J. This claim is for damages for personal injuries received by claimant on October 16, 1934, while an inmate of Auburn State Prison, under sentence of twenty-five years for attempted robbery, first degree. At the time of the accident claimant was engaged in the operation of a weaving machine used in the manufacture of cloth. The machine was operated from the front and claimant, while returning from the rear to the front of the machine, after tying a broken thread, slipped and, while falling, his left hand became caught in the spur gear, located on the left side of the machine, causing the injuries for which the claim was presented. The floor upon which claimant was obliged to walk was slippery from the accumulation of dripping oil and the spur gear was exposed and unguarded. This part of the machine could have been guarded. There is considerable dispute as to whether claimant, on the morning of the accident, properly cleaned the floor around the machine and as to whether he had knowledge of the slippery condition of the floor. The floor was continuously slippery and even when cleaned remained slippery. The machine, unlike others in the same shop, had no drip pan to catch the leaking oil. Claimant had to work under conditions as he found them and cannot be said to be negligent. It appears that a guard on the machine would have prevented his hand from being crushed. The injuries were the result of the negligence of the State in permitting a slippery floor and in failing to guard the machine.

The State, however, contends that claimant's right to sue is suspended by section 510 of the Penal Law, which reads as follows:

" § 510. Forfeiture of office and suspension of civil rights. A sentence of imprisonment in a State prison for any term less than for life, forfeits all the public offices, and suspends, during the term of the sentence, all the civil rights, and all private trusts, authority, or powers of, or held by, the person sentenced."

There is, therefore, presented the question as to whether the claimant's right to present this claim is suspended during the twenty-five years of his sentence. The State relies mainly upon *Bowles* v. *Habermann* (95 N. Y. 246) and *Davis* v. *Duffie* (8 Bosw. 617; 4 Abb. Pr. [N. S.] 478). The question here presented was not directly involved in either case. In the *Davis* case the question was whether a convict was immune from the service of civil process, and in *Bowles* v. *Habermann* the question was whether a convict's rights on appeal were suspended.

All of a convict's civil rights are not suspended by section 510 of the Penal Law. (Opinions of Attorney-General, 1930, pp. 279, 286.) A convict is under the protection of the law and an injury to his person is punishable as if he were not sentenced or convicted. (Penal Law, § 640.)

A convict does not by conviction forfeit his property, real or personal, or any right or interest therein. (Penal Law, § 512.) One imprisoned for a felony may dispose of his property (*Avery* v. *Everett*, 110 N. Y. 517), or he may take by grant or devise. (*La Chapelle* v. *Burpee*, 69 Hun, 436.) He may be brought up as a witness (Civ. Prac. Act, § 415), and his testimony is competent. (Civ. Prac. Act, § 350.) As stated in *Bowles* v. *Habermann* (*supra*, p. 249), referring to similar sections: " These provisions certainly leave a convicted felon some rights of person and property which may be defended and protected." And on page 251: " This is a highly penal statute which imposes forfeitures upon a person thus sentenced and suspends his civil rights; and it should not be extended by implication or construction."

A statutory exception to the right to sue must be distinctly expressed. (*Saxe* v. *Peck*, 139 App. Div. 419.)

In *Avery* v. *Everett* (110 N. Y. 317) it was held that the statute providing for the civil death of a life prisoner would not operate *eo instanti* to divest the person sentenced of his estate as upon a natural death and that such prisoner could and did acquire property rights. In this case it was said (on p. 333): " That no one can or ought to be divested of his property *in invitum*, except by the clear warrant of law."

Prior to the enactment of section 12-a of the Court of Claims Act, a claim such as this could not be prosecuted without special authorization from the Legislature, as the State had not waived its sovereign immunity or consented that its liability be determined. Many such special laws were enacted, and under their provisions this court heard and determined many such claims. On September 1, 1929, said section 12-a went into effect. It reads in part as follows: " The State hereby waives its immunity from liability for the torts of its officers and employees and consents to have its liability for such torts determined in accordance with the same rules of law as apply to an action in the Supreme Court against an individual or a corporation, and the State hereby assumes liability for such acts, and jurisdiction is hereby conferred upon the Court of Claims to hear and determine all claims against the State to recover damages for injuries to property or for personal injury caused by the misfeasance or negligence of the officers or employees of the State while acting as such officer or employee."

By this act the State declared its intention to compensate every person injured by the tort of the State or any of its officers or employees. As said in *Jackson* v. *State* (261 N. Y. 134, at p. 138): " Section 12-a goes beyond the point of a mere waiver of immunity from suit. It waives immunity not only from suit but also from liability. \* \* \* By section 12-a a liability when proved by the rules of law applicable to individuals, has been affirmatively assumed and jurisdiction to determine whether such a liability has been proved is conferred upon the Court of Claims. In the assumption of liability and the creation of a remedy to enforce a liability, heretofore absent by reason of the sovereignty of the tort feasor, the sovereign has not generously dispensed charity. Section 12-a constitutes a recognition and acknowledgment of a moral duty demanded by the principles of equity and justice. It includes only claims which appear to the judicial mind and conscience to be such as the Legislature may declare to be affected by a moral obligation and which the State should satisfy. (*Farrington* v. *State*, 248 N. Y. 112, 115.) It declares that no longer will the State use the mantle of sovereignty to protect itself from such consequences as follow negligent acts of individuals. It admits that in such negligence cases the sovereign ought to and promises that in future it will voluntarily discharge its moral obligations in the same manner as the citizen is forced to perform a duty which courts and Legislatures have so long held, as to him, to be a legal liability. It transforms an unenforceable moral obligation into an actionable legal right and applies to the State the rule *respondeat superior*."

Since section 12-a became a law special laws conferring jurisdiction have been passed in cases where the claims had not been filed in time. Thus for many years it has been held that where such jurisdiction had been conferred either by special or general acts the legislation was valid notwithstanding the provisions of section 510 of the Penal Law. This fact of practical construction is an argument against the State's contention. (*People ex rel. Moriarity* v. *Creelman*, 206 N. Y. 570.) If such special acts in effect before section 12-a became a law conferred jurisdiction then the general act of 1929 did likewise because it applies to " all claims against the State."

In the claim of *Bhullar* v. *State*, jurisdiction was conferred upon this court by chapter 961 of the Laws of 1935, to hear and determine a claim for damages for personal injuries sustained by an inmate of Sing Sing Prison, under a sentence of twenty years to life for murder in the first degree. The claim in that case accrued on November 23, 1931, and the act conferring jurisdiction became

a law May 16, 1935, so that the manifest purpose of this special act was to permit the hearing of the claim which was otherwise barred by the limitations of time contained in the Court of Claims Act. In that case the claim was made that the convict's rights were suspended. The decision in this court awarding damages to claimant was affirmed (248 App. Div. 802). We think that this decision is decisive here and our conclusion, therefore, is that by the enactment of section 12-a the Legislature generally granted, as it had granted in other instances by special acts, to convicts the right to present and have heard their claims against the State for damages as a result of the torts of the State, its officers or employees.

The motion to dismiss the claim is denied and an award made to claimant and findings made accordingly

Ryan, J., concurs.