BENJAMIN  E.  VALENTINE,  Respondent,  *v.*  LONG  ISLAND
RAILROAD COMPANY, Appellant.

COMMON CARRIER — WHEN RAILROAD COMPANY SUED FOR CONVER-
SION OF GOODS DELIVERED TO IT FOR TRANSPORTATION MAY SET UP ITS
OWNERSHIP OF THE GOODS AS A DEFENSE. In an action against a common
carrier to recover damages for the conversion of certain rails shipped over
its lines, in which the defendant pleaded title to the rails and secured a
verdict, assuming that the question of the availability of such a defense
was raised on the trial, and that the Appellate Division had the right to
consider it and reverse upon the ground that it was not available, the
decision of that court must be regarded as erroneous where the defend-
ant received the property for transportation in good faith, without knowl-
edge that the rails were its property, and thereafter discovered that they
belonged to it; and, therefore, there is no reason why it should not avail
itself of such defense with the same force and effect that it could avail
itself of the right of a true owner in case of a third person.

*Valentine* v. *Long Island R. R. Co.*, 102 App. Div. 419, reversed.

(Submitted November 22, 1906; decided January 8, 1907.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
March 10, 1905, reversing a judgment in favor of defendant
entered upon a verdict directed by the court and granting a
new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Joseph F. Keany* and *James W. Treadwell* for appellant.
The objection of bailee's estoppel was not and is not avail-
able to plaintiff, not having been raised in any form in the
pleadings or upon the trial. (*G. & W. Ry. Co.* v. *N. Y.
C. R. R. Co.*, 163 N. Y. 228; *C. I. Co.* v. *Mayor, etc.*,
53 App. Div. 260; *Aeschlimann* v. *P. Hospital*, 165 N. Y.
296; *Megowan* v. *Peterson*, 173 N. Y. 1; *Robinson* v.
*Hawley*, 45 App. Div. 287; *Schieck* v. *Donohue*, 92 App.
Div. 330; *Roberge* v. *Winne*, 144 N. Y. 709; *Brady* v.
*Nally*, 151 N. Y. 258; *Knapp* v. *Simon*, 96 N. Y. 284;
*F. L & T. Co.* v. *H. R. R. Co.*, 152 N. Y. 251.) Under

such circumstances as in the case at bar the carrier is not estopped from asserting its ownership. (*W. T. Co.* v. *Barber*, 56 N. Y. 544; *The Idaho*, 93 U. S. 575.) The agreement between Cheever and the defendant was a valid one, and the title to the rails in suit did not pass to plaintiff by the conveyance of the land from Cheever, notwithstanding plaintiff's ignorance of the agreement by which they were to retain their character as chattels. (*People ex rel. Muller* v. *Bd. of Assessors*, 93 N. Y. 308; *L. F. Co.* v. *L. G. Co.*, 82 N. Y. 476; *Ford* v. *Cobb*, 20 N. Y. 344; *Mott* v. *Palmer*, 1 N. Y. 564; *Tifft* v. *Horton*, 53 N. Y. 377; *Wilcox* v. *Drought*, 36 Misc. Rep. 351.) Defendant did not lose its title to the part of the rails in question which had been taken up, and allowed to remain on the plaintiff's land for some years before the rest were removed. (*Heller* v. *Cohen*, 154 N. Y. 299; *Miller* v. *Warren*, 94 App. Div. 192; *Kelly* v. *Kelly*, 72 App. Div. 487.) The claim that defendant lost its title by abandonment is untenable. (*Adriance* v. *Roome*, 52 Barb. 399; *Bank of Attica* v. *P. & S. Co.*, 49 Hun, 606; *Miner* v. *Edison Co.*, 22 Misc. Rep. 543; *Nutting* v. *K. C. El. R. R. Co.*, 91 Hun, 251; *Cox* v. *Stokes*, 156 N. Y. 491.)

*Benjamin E. Valentine*, respondent, in person. Under the circumstances disclosed in this case, possession being one of the greatest advantages in a litigation over title, defendant had no right to take advantage of its agency as bailee to shift the onus or burden of proving ownership on plaintiff. (*Pullian* v. *Brubiggan*, 81 Mo. 111; *Thompson* v. *Williams*, 30 Kan. 114; *Sedgwick* v. *Macy*, 24 App. Div. 1.) The trial court erred in adopting as conclusive — either on the point of original ownership of the rails or the alleged lending of the same to the syndicate — the testimony of the witness J. D. Cheever. (*Kavanaugh* v. *Wilson*, 70 N. Y. 177; *Elwood* v. *W. U. T. Co.*, 45 N. Y. 554.) The court erred in holding that the rails did not lose their character as personalty. (*L. F. Co.* v. *L. G., etc., Co.*, 82 N. Y. 476; *Prescott* v. *Wells*, 3 Nev. 82; *Shellan* v. *Shivers*, 171 Penn, St. 569; *Chandler*

v. *Hamel,* 57 App. Div. 305; *McFadden* v. *Allen,* 134 N. Y. 489.) The trial court erred in refusing to recognize the title arising from the exclusive possession of the rails by the plaintiff for more than six years. (*Campbell* v. *Holt,* 115 U. S. 624.) Assuming such an oral agreement as claimed by J. D. Cheever had been made, and that it might have been effectual to permit defendant to remove the rails when the railroad "ceased to be used" in 1889, the defendants had abandoned the right to the rails by their laches for ten years, and the court's refusal to submit that question was error. (*Campbell* v. *Holt,* 115 U. S. 622.)

HAIGHT, J.   This action was brought to recover the value of about one hundred and twenty tons of iron rails, fish-plates, bolts, spikes, etc., of which the plaintiff claimed to be the owner and which he alleged had been converted by the defendant. The evidence tended to show that in the latter part of the year 1899 the plaintiff applied to the station agent of the defendant at Woodsburg, near Cedarhurst, for cars and rate for shipping rails from that station to New York. The agent was unable to give the desired information, but subsequently obtained the rate and cars from a superior officer, and a few days thereafter the plaintiff loaded the cars and they were started for their place of destination. It is undisputed that the rails were never transported to New York or delivered to the plaintiff or his consignee, but the evidence is to the effect that the defendant subsequently ascertained that the rails belonged to it, and, therefore, they were sidetracked at Jamaica and the delivery to the plaintiff was refused. It further appears that the Ocean Point Company was the owner of an unimproved tract of land, and that for the purpose of developing the property the Rockaway Steeplechase Association was organized to operate a racecourse upon the grounds of the company, and that to facilitate its use as a racecourse a railroad was projected from Woodsburg station on the Long Island railroad to the grounds of the association; that one Cheever, a large owner of the stock of the company,

procured the right of way from the owners of land over which the proposed road was to be constructed, and then an agreement was entered into between the association and the defendant to the effect that the defendant was to loan the rails and ties necessary for the construction of the railroad to the association grounds and that the association was to pay for putting them down, the rails to remain the property of the defendant, and when they ceased to be used for railroad purposes the defendant could remove them at will. This agreement was carried out and the defendant occupied the railroad by running its cars over the same to the race track of the association during the spring, summer and fall meetings of the association until 1888, when the association's buildings were destroyed by fire, since which the premises have not been used as a racecourse. There is some evidence tending to show that thereafter the road was used for a time for the running of horse cars, but that after a time this was abandoned and the switch at the station on the main line of the defendant company was taken up. Thereupon the plaintiff, who, in the meantime, had procured a quitclaim deed from Cheever of the right of way and had acquired most of the stock of the Cedarhurst Company which had succeeded to the title of the lands of the association, applied to the defendant company to reinstate the switch at Woodsburg station so that freight consigned to the plaintiff could be run over the tracks to his premises. This, at first, was objected to on the ground that the bridge over the creek was not of sufficient strength to sustain the weight of the engine, but upon the offer of the plaintiff to draw the cars by horses from the main line over this railroad the defendant consented to restore the switch and did so; but shortly thereafter the representatives of the Wood estate, across whose premises the rails were laid, tore them up, thus preventing the use of the road for railroad purposes. This was in 1895. Subsequently, the tracks were taken up by the plaintiff and the rails shipped by the defendant to New York, as before stated.

At the conclusion of the evidence the defendant moved for

a direction of a verdict in its favor.   The plaintiff objected and asked to go to the jury upon the following questions:

" 1. As to whether there was an agreement on the part of the plaintiff's grantor that the defendant might remove said rails when the use of the railroad was discontinued.

" 2. Whether or not, it appearing the use of said road was discontinued from 1888 to 1900, a period of twelve years, the defendant had abandoned said rails.

" 3. On the question of the value of that portion of the shipment of said rails which the plaintiff had had at his own private residence for seven years."

Each of these requests was refused and exceptions were taken by the plaintiff.   The court then directed a verdict in favor of the defendant.

As to the first request the evidence as to the agreement under which the rails were loaned by the defendant company to the association was by a former officer of the association, a disinterested person, and it is not controverted.   As to the second and third requests, as we understand the plaintiff's testimony, the rails were upon the roadbed intact as late as 1895 when the plaintiff procured the switch at the Woodsburg station to be reinstated so that he could draw freight cars over the same.   No act of abandonment is shown except the lapse of time.   The conversion charged by the defendant was in 1899, less than five years from the time when the new switch was put in.   We think, therefore, that there were no errors with reference to the rulings upon these questions.

The plaintiff now contends that the rails were part of the realty, and as such that the title passed to him under the quitclaim deed which he obtained from Cheever.   Upon this question the evidence is very meager.   He testified that he did not know that the railroad company furnished the rails or claimed them, but he does not state that he was a *bona fide* purchaser for value, or that he paid a dollar consideration for the deed.   He had lived at Cedarhurst for twenty years, and was an officer and stockholder in that company.   He must have known that the defendant operated the road upon which

these rails were laid up to that the buildings of the time the steeplechase association were burned. The fact that the defendant operated the road and that this branch was connected by switch with the main line was, we are inclined to think, such a notice to the plaintiff as ordinarily would suggest inquiry as to its rights and claims in the matter; but however that may be, the facts involved were not requested to be submitted to the jury, nor does the attention of the trial court appear, by the record, to have been called thereto, nor an exception taken, as it should have been in order to raise a question of law upon which a reversal of the judgment could be based.

We are thus brought to the consideration of the question upon which the Appellate Division has reversed the judgment. The defendant, as we have seen, is a common carrier sued for conversion of the rails which had been shipped over its line. It pleaded title to the goods, and a verdict was directed in its favor. The Appellate Division has reversed upon the ground, as stated in its opinion, that this plea was not available as a defense; but here again our examination of the record fails to disclose any motion, request or exception that raised this question upon the trial. The defendant was permitted not only to plead title without question, but to prove it upon the trial without having the attention of the court called to the question as to whether such a defense was available to the defendant. But assuming that the question was raised and that the Appellate Division had the right to consider it, we doubt the correctness of the conclusion reached with reference thereto. The rule undoubtedly is that a bailee cannot plead *jus tertii* against his bailor and that such rule applies to common carriers. (*The Idaho*, 93 U. S. 575.) The reason for the rule is that by such a plea the bailee or the common carrier might through the claim of some third person keep the property for himself. But there are a number of exceptions to this rule, as for instance where the property has been taken from the bailee by process of law, or where the title of the bailor had terminated, or where the bailor was an agent and the return of the property to him had

been forbidden by his principal, or where it appears that the plaintiff had obtained possession of the property feloniously or tortiously by felony, force or fraud and the property has been surrendered to the owner or the officers of the law, or where the true owner has demanded the same and the bailee has surrendered the property to him. (*Mullins* v. *Chickering*, 110 N. Y. 513, 514; *Shelbury* v. *Scotsford*, Yelv. 23; *Hardman* v. *Willcock*, 9 Bing. 382, 384; *King* v. *Richards*, 6 Wharton [Pa.] 418; *Bursley* v. *Hamilton*, 15 Pickering, 40; *Wright* v. *Pratt*, 31 Wis. 99; *Edmunds* v. *Hill*, 133 Mass. 445; Angell on Carriers, § 336; Story on Bailments, §§ 120, 266, 582, and authorities cited.) But the rule of *jus tertii* pertains to a right of property in third persons and is not this case. The reason that reference has been made to the rule applicable thereto is on account of the claim that the same rule should apply as between the bailor and bailee. In this case the plaintiff delivered the rails to the defendant for transportation to a place designated. The defendant received the goods and undertook to transport them for the plaintiff. Ordinarily it would be liable for breach of contract in case it failed to deliver the goods in accordance with the contract and would be estopped from interposing the plea of ownership, for it could not be permitted by failing to assert ownership at the time of shipment to obtain possession of the property and then assert title. But this rule has its exceptions and the exceptions are similar to those already discussed under the rule of *jus tertii*. If the defendant received the property for transportation in good faith without knowledge that it was its property and thereafter discovered that the property belonged to it, we see no reason why in an action for conversion it may not avail itself of the defense that the property belonged to it, with the same force and effect that it could have availed itself of the right of a true owner in case of a third person. It had the right to show that it was deceived by the plaintiff's claim of ownership when the property was tendered for transportation, and that by reason thereof it was excused from investigating the facts and asserting its ownership. The

defendant, however, is not permitted by this defense to shift the burden of proof. The plaintiff proves his cause of action by showing that. he delivered the property to the defendant for transportation. The burden then was cast upon the defendant of showing that it received the goods in good faith under a mistake of fact as to the plaintiff's ownership, and that it was the true and paramount owner of the property.

The order of the Appellate Division should be reversed and the judgment of the trial court affirmed, with costs in all courts.

Cullen, Ch. J., Gray, Vann, Werner, Willard Bartlett and Hiscock, JJ., concur.

Ordered accordingly.