CELESTINE MULLINS, Respondent, *v.* CHARLES F. CHICKERING et al., Appellants.

Plaintiff delivered to defendants a piano to be stored for her. The executors of her deceased husband claimed it as belonging to their testator's estate, and on demand defendants delivered it to them. In an action for conversion, it appeared that the testator purchased the piano and paid for it with his own money. Plaintiff was permitted to testify that the piano was given to her by her husband. *Held,* error; that defendants by delivery to the executors took the risk of their title, but could defend upon and justify under it; that they came, therefore, within the description of section 829 of the Code of Civil Procedure, as persons deriving title "from, through or under a deceased person * * * by assignment or otherwise," and as against them, therefore, plaintiff was prohibited by said section from testifying in her own behalf to any personal transaction between herself and her husband.

(Submitted April 30, 1888; decided October 9, 1888.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made at the February Term, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was for the alleged conversion of a piano delivered by plaintiff to defendants for storage in their storage warehouse. Defendants, by supplemental answer, set up title in the executors of plaintiff's deceased husband and a delivery to them on demand.

The facts, so far as material, are set up in the opinion.

*Theo. H. Swift* for appellants. The court erred in allowing the plaintiff to testify, under defendants' objection, that "her husband gave her the piano — bought it for her." (Code, § 829 ; 47 N. Y. 580.)

*Paul Fuller* for respondent. The defendants, wrong-doers, who had converted plaintiff's property, were neither the executors of the deceased, nor did they derive any title or inter-

est from, through or under the deceased husband of the plaintiff, and could not object to plaintiff's evidence as violative of the provision of the Code. (§ 829.) The evidence of a gift was complete. (*Doty* v. *Wilson*, 47 N. Y. 583.)

FINCH, J. The defendants were bailees of the plaintiff. She placed the piano in their possession, to keep for her and return upon her demand. They were not at liberty to dispute her title except in one emergency and at one peril. The executors of the husband claimed title to the property as having belonged to the testator, and demanded it of the defendants. They chose to submit to the demand and delivered the piano to the executors. By so doing they made themselves parties to the controversy, and when called on to return the property to the plaintiff their refusal exposed them to an action for ,conversion, which has gone against them. They had, however, the right to set up as a defense the *jus tertii*, and defend, if they could, upon the title of the testator which had passed to the executors, since before this action was tried they had submitted to that title, and delivered the property to those who .claimed to be owners ( *W. Trans. Co* v. *Barber*, 56 N. Y. 544), .and had been permitted to raise that question by a supplemental answer. They had taken upon themselves the risk of that title, but could defend upon it and justify under it. ·They chose to hold under the testator and to derive their title .and interest and all their right to the property or its possession .from and under the deceased, and had a right to defend their surrender upon that title.

They came, consequently, within the description of section 829 of the Code of Civil Procedure as " a person deriving his title or interest from, through or under a deceased person ·* * * by assignment or otherwise." Against them, therefore, the plaintiff could not testify in her own behalf to any personal transactions between herself and her husband. She did so testify. The proof showed that he bought and paid for the piano with his own money. That established title in him. She met the emergency by swearing that he, the owner,

gave it to her.   That proof was objected to on two grounds —
as in violation of section 829, and as a conclusion of law.
The first objection, at least, was good.   A critical and close
construction of the record might justify a ruling that the
objection came too late, and that a motion to strike out the
evidence was needed.   But the respondent makes no such
point.   Her counsel assume that the objection was fairly and
properly taken, but resist it as unsound.   We ought not, there-
fore, to indulge in a severity of criticism which the silence of
the respondent indicates would not be justified by what
actually occurred, and the record shows notice of an objection
given in advance, and repeated in detail when the character
of the evidence became apparent.

For this error the judgment should be reversed and a new
trial granted, costs to abide event.

DANFORTH, J. (dissenting).   The action was begun July 3,
1883, for conversion by defendants of the plaintiff's piano.
The original answer was a general denial.   On the 27th of
April, 1885, by supplemental answer the defendants say the
piano was left with them by the plaintiff for storage, but was
afterwards demanded by the executors of John Mullins, her
deceased husband, as part of his estate, and delivered to them by
the defendants ; and that after the commencement of the action
the plaintiff, with knowledge of this fact, and that the said
executors claimed the said piano as against any right or title
of the plaintiff thereto, for a valuable consideration executed
to the executors a full release and satisfaction of all claims and
demands which the plaintiff then had against the said estate or
the executors thereof, " and received full payment and satis-
faction therefor, including the said piano, now the subject of
this action,"   To which said release the defendants refer as
forming part of their answer and defense.

It seems obvious that the defenses are :   First.  A general
denial ; and, second, a release by plaintiff to the executors and
payment and satisfaction by them for the piano.   There is no
defense on the ground that the executors were, in fact, entitled

to the piano, or that it at any time belonged to or was the property of their testator, or that it, in fact, formed part of his estate. There is no allegation of title in the defendants, or in any third person. Simply that the executors made a claim, and we should not extend or amplify this for the purpose of reversing the judgment.. The defendants, therefore, have no standing under their answer to try the question of right as between the plaintiff and the executors. Upon the issue made by the general denial the defendants' case is no better. ˙ The action goes upon the ground that the defendants were bailees for hire, and wrongfully appropriated the piano to their own use. Any possession of the plaintiff is sufficient to sustain it against a wrong-doer who has no title, and who does not defend by reason of title in another. The plaintiff's possession, therefore, gave her a good title against all the world but the true owner.

The evidence in this case leaves no doubt that the piano was in the actual possession of the plaintiff on the 27th of December, 1881; that on that day she delivered it to the defendants for storage, and they received it from her for that purpose. The transaction was with defendants' manager at their warehouse. She sent the piano by their cart to that place, and said to him: "There is my piano; I wish you would keep it on storage for me, and he said 'very well.'" The price for storage was agreed upon and the piano left with the defendants, who received it from the plaintiff to store for her, and it was so entered on their books.

In September, 1882, the plaintiff went for the piano and demanded it and was refused. At that moment she had a good cause of action, which would not have been discharged, even by a subsequent return of the property to her, much less by its delivery to a third person. But the supplemental answer, so far from showing a defense, in fact, shows that the plaintiff was in position to maintain the action by simple proof of the possession by her of the piano. Her cause of action accrued in September, 1882, and the only pretense of its release or discharge is founded upon the idea that the executors

and the defendants were jointly liable for the conversion, and so it is claimed the release above referred to also discharged the defendants by reason of the rule that the release of one joint tort feasor discharges all. The record itself, however, shows that the sole object of the release was to dispose of another suit then pending against the executors upon a wholly different cause of action, and that it had no reference to the one now before us.

A point is made by the appellants that the court erred in allowing the plaintiff to testify that "her husband gave her the piano; bought it for her." Under the view already presented, the source of the defendants' possession was immaterial. The plaintiff's case was made out by her possession of the piano and the contract of bailment between herself and the defendants and its breach by others. But being examined as to value, objections were interposed to her competency to speak upon that subject. She then stated that she was a musician, in the habit of using pianos, and being asked: "And of buying them or having them bought for you by your husband?" No objection was made to this question, and she answered, "Yes, sir;" and showed other means of knowledge. She testified to the value. She was then asked: "Where did you get the piano you delivered to the Chickerings?" DEFENDANTS' COUNSEL—"I desire to reserve any objection which may be made to her answer." There was no reply to or notice taken of this observation, nor was the question answered. She was then asked: "Did you buy it, or who gave it to you?" The question was not objected to and the witness said: "It was bought by my husband for me from Chickering." Defendants' counsel then said: "Objected to," but no ground was stated, nor does it appear that there was any ruling upon the objection, or, if any, that any exception was taken. Then followed this question: "Your husband gave it to you?" Answer: "Yes; bought it for me." Then follows: "Objection by defendant as incompetent, under section 829 of the Code, and as incompetent and immaterial, and further as being a conclusion of the gift from her husband. Objection overruled, defendants except."

(1.) As an objection to the question, the exception came too late; and as an objection to the answers, was insufficient. The remedy was by motion to strike out. (*Stevens* v. *Brennan*, 79 N. Y. 254.) Moreover, the question had, in substance, been before asked and answered, and the evidence called for was already in.

(2.) But the evidence, in view of the pleadings, was wholly immaterial, and in no respect necessary to a perfect cause of action, which, upon other evidence, was established upon a good foundation. It might be stricken out without affecting the result. It, therefore, could not have prejudiced the defendant. (*Comstock* v. *Hier*, 73 N. Y. 281.)

(3.) The section of the Code cited has no application. The action was not against the executors, nor did the defendant derive any "title or interest from, through or under a deceased person by assignment or otherwise." The cause of action was complete in September, 1882. The demand of the executors was in 1883, and not until then, if ever, could the defendants, under any circumstances, be considered as standing in their place. But it is a decisive answer to the objection that the defendants set up no title in the executors, nor in the estate with the management of which they were charged.

I find nothing in the case to take the defendants out from the general rule that a bailee cannot deny the right of the person from whom he receives the property. They became, by that act, the agents of the bailor, and could not dispute her title. This rule applies to all cases where the bailor has not yielded to the paramount title in another, so that the bailment is determined by what is equivalent to an eviction by the real owner. It is not enough that the bailee has been notified of the claim of a third person, for possibly, as it is said, "the owner might never pursue his claim or enforce his title." (*Case* v. *Hall*, 24 Wend. 102; *O'Brien* v. *Jones*, 91 N. Y. 193.) Nor is it enough that an adverse claim is made upon the bailee, so that he might be entitled to relief under an interpleader. Of course, if, in answer to the demand made by the plaintiff, the defendant had called upon the adverse claimants

to come forward and litigate the matter, a different question would have been presented. Here there was no such call, and it would be most unjust to permit a bailee to deprive a bailor of her right of action for conversion by subsequent dealings with a third party. As the case stands, the defendants were wrong-doers, claiming under no one, and I find on this appeal no ground for reversing the judgment which requires them to make compensation.

The judgment should be affirmed.

All concur with Finch, J., except Danforth and Gray, JJ., dissenting, and Ruger, Ch. J., not voting.

Judgment reversed.