GEORGE W. BENNETT *vs.* AMERICAN EXPRESS COMPANY.

Penobscot.    Opinion March 24, 1891.

*Game.   Common carrier.   Interstate Commerce.   Constitutional law.   Officer. Express Company.   R. S., c. 30, § 12.*

Ownership of property by the plaintiff, its delivery to and acceptance by a common carrier for transportation, and its non-delivery to the consignee, are *prima facie* evidence of negligence. The burden then rests upon the carrier to show facts exempting it from liability.

The property of the plaintiff, while lawfully in the possession of the defendant as a common carrier, was seized unlawfully by an officer, without any warrant or legal process, nor was any afterwards obtained.  *Held* :  That the officer was a trespasser, and that the common carrier was liable in the same manner as if it had allowed any other trespasser to take the property out of its custody.

Revised Statutes, c. 30, § 12, which imposes a penalty for killing, destroying or having in possession, during certain portions of the year, "more than one moose, two caribou or three deer," does not apply to common carriers in the performance of their duties.

When property is rightfully delivered to a common carrier to be transported to a point outside the limits of the State, the duty of the carrier is not merely to transport the property in the State, but to such point outside the limits in another State.

Where such property has lawfully commenced to move as an article of commerce from one State to another, that moment it becomes the subject of interstate commerce, and as such is subject only to national regulation.

The same is true in relation to whatever agency may be used as the means of transporting such commodities as may lawfully become the subject of purchase, sale or exchange, under the commerce clause of the Constitution of the United States.

AGREED STATEMENT.

This was an action on the case to recover the value of the saddles of three deer.  Plea, general issue.  The facts appear in the opinion.

*F. J. Whiting*, for the plaintiff.

*Barker, Vose and Barker*, for the defendants.

FOSTER, J.   It is undisputed that the plaintiff was lawfully possessed and the owner of the saddles of three deer, which were legally killed under the laws of this State ; that the same were closely boxed in good condition for shipment, and delivered by the plaintiff on to the platform of the Maine Central Railroad Company, at Newport Station, plainly marked to the consignees in Boston.  The defendants' agent was notified that the box was left for transportation, and thereupon he delivered it into the defendants' car, on the arrival of the train, but no receipt or bill of lading was ever given to the plaintiff.  Upon the arrival of the train at Augusta, the saddles were seized by a game warden, and by him removed from the defendants' car, without any search warrant or other legal process, and without objections

from the defendant company or their agents, and have never since been delivered either to the consignees or the Express Company.

Upon the facts thus stated the defendants' liability is fully established. The plaintiff's ownership of the property, its delivery to the defendants for transportation, and their acceptance for that purpose, and its non-delivery to the consignees, are *prima facie* evidence of negligence. The burden is, therefore, upon the defendants to show facts exempting them from liability. *Little* v. *Boston and Maine Railroad*, 66 Maine, 241.

The property of the plaintiff while in the hands of the defendants as common carriers, *in transitu*, was seized by an officer, without any warrant or other legal process. Nor does it appear that any was ever obtained. The officer was, therefore, a mere trespasser, and the defendants were liable under the rule of the common law, in the same manner as if they had allowed any other trespasser to take the property out of their custody.  *Edwards* v. *White Line Transit Company*, 104 Mass. 163. As against the plaintiff, the seizure was of no more validity than a trespass by an unofficial person. There has never been any adjudication from any tribunal that the property seized was contraband, or other than the lawful property of the plaintiff. The common carrier is not relieved from the fulfilment of his contract, or his liability as such carrier, any more than if the loss had occurred from fire, theft, robbery or accident. He stands in the relation of insurer, where, as in this case, no special contract is shown; and upon grounds of public policy is liable for all losses resulting from accident, trespass, theft or any kind of unlawful dispossession of the property intrusted to him to carry,—excepting only such as arise by the act of God or public enemies. *Adams* v. *Scott*, 104 Mass. 166; *Kiff* v. *Old Colony and Newport Railway*, 117 Mass. p. 593; *Fillebrown* v. *Grand Trunk Railway Company*, 55 Maine, 462.

In the case of *Edwards* v. *White Line Transit Company*, *supra*, it was held that while the carrier was not liable in trover for conversion of the property, he was, nevertheless, liable on his contract or obligation as common carrier, where the officer

seizing the property was a trespasser. "The owner may, it is true," say the court, "maintain trover against the officer who took the property from the carrier; but he is not obliged to resort to him for his remedy. He may proceed directly against the carrier upon his contract, and leave the carrier to pursue the property in the hands of those who have wrongfully taken it from him."

But the defendants claim exemption from liability in this action, on the ground that the property was put into their possession fraudulently; that having had in their possession, and transported during the year, after the first day of October, and before the time when this property was delivered to them, three deer from Newport Station, to places beyond the limits of the State, they directed their agents not to receive for transportation any deer or parts thereof, and that this fact was known by report to the plaintiff before he delivered the box to the defendants' agent.

Notwithstanding these facts may all be true, they constitute no defense to this action. The statute invoked by the defendants, (R. S., c. 30, § 12,) is as follows: "Whoever kills, destroys, or has in possession between the first days of October and January, more than one moose, two caribou or three deer, forfeits one hundred dollars for every moose, and forty dollars for every caribou or deer killed, destroyed or in possession in excess of said number, and all such moose, caribou or deer, or the carcasses or parts thereof, are forfeited to the prosecutor. Whoever has in possession, except alive, more than the aforesaid number of moose, deer or caribou, or parts thereof, shall be deemed to have killed or destroyed them in violation of law."

The defendants claim that, under this statute, they could not lawfully take any more deer, or parts thereof, into their possession for transportation before the following January.

But we can not adopt such a construction of this statute as would make it apply to common carriers. Such construction as claimed by the defendants would make it unlawful for the carrier to transport, between the first days of October and January, the carcasses of moose, caribou or deer, lawfully killed

before the first day of October.   Laying aside all constitutional questions, for the present, in relation to the doctrine of interstate commerce, it is sufficient to say that it was not the intention of the legislature so to apply it.   The statute, like many others, may in general terms be broad enough to embrace corporations as well as natural persons within its prohibition.   But its construction must be such as was evidently intended by the legislature.   That intention, to some extent, may be ascertained by taking into consideration the evil sought to be remedied. Such was the decision of this court in its construction of the section following the one now under consideration.   *Allen* v. *Young,* 76 Maine, 80.   In that case it was held that the transportation of the hide or the carcass of a deer, from place to place in this State, is not unlawful if the deer was killed at a time when it was lawful to do so, notwithstanding the statute in express terms provides that whoever carries or transports from place to place the carcass or hide of any such animal, or any part thereof, during the period in which the killing of such animal is prohibited, shall forfeit the sum of forty dollars. Certainly that language is as broad, comprehensive and imperative as that of the statute invoked it this case.   Yet the court aptly remarked that it could see no possible motive for making such transportation a crime.   To the same effect was the decision in *State* v. *Beal,* 75 Maine, 289.   "The meaning of the legislature may be extended beyond the precise words used in the law, from the reason or motive upon which the legislature proceeded, from the end in view, or the purpose which was designed." *United States* v. *Freeman,* 3 How. (U. S.) 557, 565 ; *Holmes* v. *Paris,* 75 Maine, 559, and authorities there cited.

The box was delivered to and received by the company.   No information was asked concerning its contents, and none given. If the plaintiff knew by report when he delivered the property to the defendants that their agents had been directed not to receive any deer or parts thereof, yet there was no limitation of the company's responsibility by special contract, or such knowledge brought home to this plaintiff, and assented to by him as would be necessary to limit such responsibility.   *Fille-*

*brown* v. *Grand Trunk Railway Company*, 55 Maine, 462. "A carrier may limit his responsibility for property intrusted to him," says Bigelow, C. J., in *Buckland* v. *Adams Express Company*, 97 Mass. 125, "by a notice containing reasonable and suitable restrictions, if brought home to the owner of goods delivered for transportation, and assented to clearly and unequivocally by him. It is also settled that assent is not necessarily to be inferred from the mere fact that knowledge of such notice on the part of the owner or consignee of goods is shown. The evidence must go further, and be sufficient to show that the terms on which the carrier proposed to carry the goods were adopted as the contract between the parties, according to which the service of the carrier was to be rendered."

It is undoubtedly the right of the carrier to require good faith on the part of those who deliver goods to be carried, or enter into contracts with him. The degree of care to be exercised as well as the amount of compensation for the carriage of property depends largely on its nature and value, and no fraud or deception should be used which would mislead the carrier as to the extent of his duties or the risks which he assumes. But we fail to see any such evidence of fraud or deception in this case as would exonerate these defendants.

This property was lawfully the property of the plaintiff; it was delivered to and accepted by the defendant company for transportation to a point beyond the limits of this State. Their liability as common carriers held them to a strict fulfilment of their obligation in relation to the property in their charge. That obligation was not merely to transport the property in this State, but to a point outside of its limits in another State. It had lawfully commenced to move as an article of commerce from one State to another. From that moment it became the subject of interstate commerce, and as such was subject only to national regulation, and not to the police power of the State. The same is unquestionably true in relation to whatever agency or instrumentality may be used as the means of transporting such commodities as may lawfully become the subject of purchase, sale or exchange, under the commerce clause of the Constitution

of the United States. The transportation of the subject of interstate commerce, where it is such as may lawfully be purchased, sold or exchanged, is, without doubt, a constituent of commerce itself, and is protected by and subject only to the regulation of Congress. *The Daniel Ball,* 10 Wall. 557, 565; *Bowman* v. *Chicago and North Western Railway Company,* 125 U. S. 465, 485; *County of Mobile* v. *Kimball,* 102 U. S. 691; *Welton* v. *Missouri,* 91 U. S. 275; *Coe* v. *Erroll,* 116 U. S. 517; *Leisy* v. *Hardin,* 135 U. S. 100.

> *Defendants to be defaulted; damages to be assessed at nisi prius.*

PETERS, C. J., LIBBEY, EMERY, HASKELL and WHITEHOUSE, JJ., concurred.