EYTINGE & CO. Inc., v. ATLANTIC TRANSPORT CO.

(Supreme Court, Appellate Division, First Department. February 13, 1914.)

1. BAILMENT (§ 8*)—BAILEE'S DENIAL OF BAILOR'S TITLE.

The bailee may not, for his own benefit, deny the title of his bailor or avail himself of the title of a third person, even though such person may be the true owner, but, after surrender to the true owner or the person legally entitled to the possession thereof, may defend an action by his bailor by proving right to possession or title in another than the bailor.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. § 32; Dec. Dig. § 8.*]

2. BAILMENT (§ 31*)—ACTION—BURDEN OF PROOF.

A bailee, defendant in an action for breach of its contract by delivery to the true owner, has the burden of proving the title of the person to whom he made delivery.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 124–131; Dec. Dig. § 31.*]

3. CARRIERS (§ 94*)—ACTION FOR MISDELIVERY—ESTOPPEL TO QUESTION RIGHT OF THIRD PARTY.

A forwarder of goods, having no title thereto or any lien thereon, suing the carrier for delivery to its correspondent, who thereupon delivered the goods to the consignees shown in the waybills, before payment of the draft which the forwarder, without right, there being no debt represented thereby, had attached to the bill of lading, was estopped to question the right of the ultimate consignees to receive them.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. § 94.*]

4. CARRIERS (§ 94*)—ACTION FOR MISDELIVERY—EVIDENCE.

In such action, where defendant carrier had the burden of showing that the goods ultimately reached those entitled to receive them, the fact that it was indemnified against the outcome of the action was immaterial, as it did not affect that burden or the question of its liability.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. § 94.*]

5. JUDGMENT (§ 831*)—FOREIGN JUDGMENT—PROOF OF JURISDICTIONAL FACTS.

The record of a judgment in the English High Court of Justice was inadmissible, where no proof of the essential jurisdictional facts was offered.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1519–1522; Dec. Dig. § 831.*]

6. CARRIERS (§ 76*)—ACTION FOR MISDELIVERY—TITLE OF PLAINTIFF—DAMAGE.

A mere forwarder having no title to the goods or any right to make their delivery to its correspondent dependent upon its payment of a draft wrongfully attached to the bill of lading, there being no debt represented thereby, having no title or claim to the freight, showed no damage, where

the carrier showed delivery to the ultimate consignees, and hence could not recover for delivery to the correspondent before payment of such draft.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 256–271, 363; Dec. Dig. § 76.*]

Exceptions from Trial Term, New York County.

Action by Eytinge & Company, Incorporated, against the Atlantic Transport Company. Motion by plaintiff for judgment upon a verdict directed in its favor at Trial Term; the exceptions having been ordered to be heard at the first instance at the Appellate Division. Exceptions sustained, verdict set aside, and motion for new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, J.

Albert P. Massey, of New York City, for appellant.
Carleton S. Cooke, of New York City, for respondent.

SCOTT, J. The plaintiff sues for damages for the breach by defendant of its contract of bailment evidenced by two bills of lading issued by said defendant. The exceptions are to the exclusion of evidence offered by defendant, and in stating the facts upon which the question of defendant's liability turns it will be assumed that the evidence offered and excluded would have established the facts to prove which it was so offered.

Plaintiff is a corporation doing business in the city of New York engaged in the business of forwarding goods to England for delivery there to consignees designated by the consignors of the goods. So far as regards the transaction out of which this action arose, plaintiff thus shipped no goods of its own, but only goods intrusted to it by others for shipment and delivery. The Universal Shipping & Forwarding Company, Limited (hereinafter for brevity called the Universal Company), was a corporation apparently doing a similar business in London. For some time prior to December 19, 1911, plaintiff and the Universal Company had had a working agreement as to shipments to and fro. On said December 19, 1911, the Universal Company notified plaintiff of its intention to cancel the contract and appoint another American agent, agreeing however that goods in transit should fall under the existing contract, and offering to act for plaintiff, if desired, until further arrangements could be made. Up to this time plaintiff had shipped frequently by defendant's steamers, invariably taking bill of lading in favor of the Universal Company. These it sent to the Universal Company, and also sent what were termed waybills showing the marks on the several packages shipped, the value of each, the name of the person from whom each had been received for shipment, and the name of the consignee to whom each package was to be delivered. It was the duty of the Universal Company to receive the goods from the steamer, and to deliver the several packages to the consignees named in the waybills.

On December 22, 1911, plaintiff delivered to defendant 194 packages for shipment to London, taking two bills of lading to its own

order; this being the first time that it had taken bills of lading in this form. On December 26, 1911, plaintiff drew its draft upon the Universal Company in favor of the Produce Exchange Bank for £413. 14s. 8d., attached to the draft the two bills of lading above mentioned, and delivered both draft and bills of lading to said Produce Exchange Bank. So far as it appears from the evidence, the sum for which this draft was drawn was a purely arbitrary one. It does not appear that the Universal Company owed plaintiff any sum whatever, and it was conceded upon the trial that the draft did not represent anything that was due to plaintiff from any one on account of the goods shipped. For some reason, possibly on account of delay in negotiating the draft, the steamer containing the goods arrived at the Port of London before the bills of lading. The Universal Company, which so far as appears had no knowledge of the form in which the bills of lading had been issued, arranged with the defendant for the delivery of the shipments to it, against a banker's indemnity and without the production of the bills of lading. The Universal Company, having thus received the goods, proceeded to distribute and deliver them to the several consignees, in accordance with the waybills, which had apparently been forwarded independently of the draft. When the draft was presented to the Universal Company, payment was refused, and the draft and the bills of lading attached to it were returned to plaintiff. The plaintiff now seeks to recover from defendant by reason of its breach of its contract of bailment, such breach consisting of the delivery of the consigned goods to the Universal Company instead of holding them subject to plaintiff's order, damages in the sum for which the draft above mentioned was drawn. As between plaintiff and defendant the former occupied the position of bailor, and the latter that of bailee, and plaintiff rests its right to recover upon the broad rule that a bailee may not dispute the title of his bailor or justify his breach of the contract of bailment by showing that he had delivered the subject of the bailment to another; even to one whom he honestly and in good faith believed to be the true owner. This general rule, however, is subject to many qualifications.

[1] It would be a more accurate statement of the rule to say that the bailee may not, for his own benefit, deny the title of his bailor, or avail himself of the title of a third person, even though that person may be the true owner. But it is well settled, in this state at least, that he who has delivered goods to the true owner, or the person legally entitled to the possession thereof, may defend against an action by his bailor by proving the jus tertium.

[2] In such a case, however, the burden of proof rests upon the bailee to prove the title of the person to whom he has made delivery. Mullins v. Chickering, 110 N. Y. 513, 18 N. E. 377, 1 L. R. A. 463; Western Transportation Co. v. Barber, 56 N. Y. 544; Valentine v. L. I. R. R. Co., 102 App. Div. 420, 92 N. Y. Supp. 645.

[3] In the case at bar the plaintiff was itself a bailee, as between it and those who had confided the property to it for transmission abroad. It had no other title to or interest in the goods except as bailee, for it is conceded that it had no lien upon any part of the goods for advanc-

es or charges.  To each shipper it had issued what it denominated a "through bill of. lading," by which it undertook that the goods should be "delivered to the good steamship Minnewaska or other steamer bound for London  *  *  *  to be delivered  *  *  *  at the Port of London unto Universal Shipping and Forwarding Company, Ltd., and to be by them forwarded thence to consignees' warehouse and thence to be delivered unto" the ultimate consignee named in the bill of lading.  The defendant offered to prove, but was not permitted to do so, that each of the 194 packages covered by the two bills of lading sued upon was in fact received by the Universal Company, and by it delivered to the consignee named in the through bill of lading issued for such package, being the same person named in the waybill heretofore referred to as the person to whom such package was to be delivered.  The exceptions to the .exclusion of this testimony raise the question of law presented by this appeal.

When the plaintiff attached the bills of lading to its draft upon the Universal Company for a sum of money for which it had no claim against the goods represented by the bills, and thereby subjected the goods to a lien for the amount of the draft, it came perilously near committing the crime of larceny.  Penal Law (Consol. Laws 1909, c. 40) § 1290; Matter of McFarland, 59 Hun, 304, 13 N. Y. Supp, 22.  At all events, it wrongfully violated its contract with those who had intrusted the property to its care.  What happened was, if the evidence offered would prove what was claimed for it, that the goods were delivered, despite plaintiff's efforts to divert them, to the very persons and through the very channels that plaintiff had agreed that they should be delivered.  The plaintiff certainly suffered no damage, in a legal sense, in consequence of such delivery.  It was not necessary that defendant should prove in every case that the persons to whom the goods were ultimately delivered were the actual owners thereof.  It is sufficient that they were delivered to the person to whom the original consignees directed that they should be delivered, and to whom plaintiff undertook that they should be delivered.  It does not lie in plaintiff's mouth to question the right of the ultimate consignees to receive them.

[4]  Much stress is laid, in the respondent's brief, upon the fact that the defendant is protected by an indemnity furnished by the Universal Company.  That fact is wholly immaterial.  The burden rests upon defendant to show that the goods ultimately reached those who were entitled to receive them.  The fact that it is indemnified against the outcome of this action does not lessen or increase that burden in any way or affect the question of its liability.

[5]  The record of a judgment in the High Court of Justice seems to have been properly excluded, as no proof of the essential jurisdictional facts was offered.

[6]  Finally the plaintiff showed no damage.  It is conceded that it had no claim against the goods, and it had therefore no right to make their delivery dependent upon the payment of a draft for some claim having no relation to the shipment.

The exceptions must therefore be sustained, the verdict set aside, and a new trial granted, with costs to the defendant to abide the event. All concur.