### MARTORANA et al. v. BALTIMORE & O. R. CO.

(City Court of New York, Trial Term. February 23, 1915.)

CARRIERS (§ 115*)—SHIPMENT—REPLEVIN—LIABILITY OF CARRIER.

> Where a shipment of fruit was taken from a carrier by replevin and sold at a depreciated price under an order obtained without notice to the consignee, whose claim to the fruit was stated in the attachment affidavit, and where thereafter, without the consignee's knowledge or consent, the carrier and plaintiff in replevin stipulated that the proceeds should be turned over to such plaintiff, and that the bond required for the consignee's protection should be canceled, the carrier was liable for the consignee's damages, especially where the amount involved was manifestly not within the jurisdiction of the court entertaining the replevin action, and it appeared that the plaintiff in replevin could not have proven ownership of any part of the fruit.

> [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 501–507; Dec. Dig. § 115.*]

Action by Salvatore Martorana and another against the Baltimore & Ohio Railroad Company. Judgment for plaintiffs.

Andrew S. Fraser, of New York City, for plaintiffs.

Cravath & Henderson, of New York City (Ralph J. M. Bullowa and Henry E. Chapin, both of New York City, of counsel), for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

RANSOM, J. The plaintiffs are entitled to judgment against the defendant carrier for the value of the goods consigned to them, notwithstanding the carrier's claim that it yielded custody under compulsion of legal process and gave notice thereof to the plaintiffs. Inasmuch as counsel asked me to hear the case without a jury, and presented with much ability a number of questions which apparently have not been passed upon in reported decisions, it seems due to them to make a brief statement of the facts as found, and of the reasons why, in this instance, the carrier's plea of justification breaks down.

On October 28, 1911, Frank Panno, a nephew of one of the plaintiffs, shipped 362 boxes or cases of mixed fruit from Chicago to the plaintiffs in New York, in car No. 14980, over the defendant's lines. On the same day Panno mailed to the plaintiffs the bill of lading and a bill for $1,057.50 for the fruit, as sold and delivered by him to them. The bill he receipted before mailing, as a credit on account of his indebtedness to the plaintiffs from previous dealings. The 362 cases were a part of a considerably larger quantity of similar fruit which Panno had purchased from various Chicago dealers, among others the Merchants' Fruit Exchange and the Chicago Green Fruit Auction Company. Panno had been engaged in the buying, selling, and shipping of similar fruit in Chicago for upwards of a year, and had dealt frequently with the plaintiffs and with the concerns from which the fruit in question was bought.

The car load of fruit arrived in New York on November 1st. On that day it was taken from the defendant's custody by a city marshal, under a writ of replevin issued by the Municipal Court, upon an affidavit verified that day by James Fechteg, Jr., who made oath that he was the agent of the Merchants' Fruit Exchange and the Chicago Green Fruit Company, Illinois corporations, and that those corporations were "the owners and entitled to the immediate possession of" the fruit in car No. 14980. The sole defendant in the replevin action was the carrier, but the affidavit stated that the present plaintiffs claimed the fruit. Although the sale price of the fruit to Panno in Chicago exceeded $1,000, the replevin action was started in the Municipal Court, and the affidavit for the writ stated that "the actual value of the property is $400." The counsel who tried the present case for the defendant carrier, appeared as attorney for Fechteg throughout the replevin proceeding. A surety company bond for $1,000 was furnished by Fechteg.

On November 2d, upon an affidavit made by Mr. Bullowa, an order was entered, directing the sale of the fruit by the Connolly Auction Company. On November 3d the fruit was sold, for the sum of $791.51, nearly $300 less than its market price in Chicago, but nearly twice the value stated in the two affidavits, and nearly $300 in excess of the jurisdiction of the Municipal Court. No notice of the seizure or sale of the fruit, or of any of these proceedings, was given to the consignees or the consignor before November 4th. On the morning of November 9th, the action was dismissed in the Municipal Court, but later in the same day the defendant's attorneys sent another letter, notifying of the pendency of that action and making no mention of its dismissal. Subsequently, without notice or information to the

consignees, the carrier's attorneys signed a stipulation reviving the proceeding and restoring the case to the calendar. The consignees took no steps to intervene in or defend the action until January 25, 1912, when they asked to be impleaded, and were informed by the defendant's attorneys that, two hours before, they had joined in signing a stipulation which, as later developed, in terms consented to the entry of an annexed order directing that the Connolly Auction Company turn over the net proceeds of the fruit, $669.18, to the two Illinois corporations, releasing the carrier from liability, canceling the surety bond which Fechteg had furnished as security against the event that other persons might establish title to the fruit, and formally discontinuing the action. Although notified on January 25th that the consignees wished to be impleaded in and defend the action, the carrier's attorneys did nothing to withdraw their consent from the stipulation, upon which an order was entered four days later.

Under these circumstances, is the fact of the seizure of the fruit by a city marshal under writ of replevin a sufficient excuse for the carrier's failure to deliver the fruit to the consignees named in its bill of lading? Answer to this question involves some re-examination of the historic origin of the legal rules fixing the liability of common carriers. In the days when the functions of public carriers were fulfilled largely by use of stage coaches, and the carrier's journey brought him into communities with widely differing degrees of respect for the property rights of the absent owner, the carrier was held absolutely liable for the safety of goods in his care, unless act of God or public enemies destroyed them. If a highwayman demanded them, or a thief tried to pilfer them, he must defend and keep them at his peril, or answer to their owner for their loss. This insurer's liability was imposed on grounds of public policy, especially to prevent fraud or collusive action on the part of the carrier himself, in yielding up goods to persons not entitled to them.

Then, as courts and legal processes developed in the several communities, the question of an extension of the doctrine of vis major presented itself. Oftentimes the appearance of a constable with a writ was no less the result of collusion and connivance than had been the appearance of the highwayman in the earlier day; but what was the measure of the carrier's duty when confronted with a judicial writ for the seizure of goods in his care? Must he resist sheriff and constable with physical force? Must he tarry and delay his journey, so as himself to contest in court the rightfulness of the seizure? To subject him to the first necessity would only make his calling extrahazardous and bring judicial processes into disrespect; to subject him to the latter alternative would make impossible the seasonable completion of his journeys with the goods of other persons. It was felt that questions of title should be determined by trial in a court, and not by debate between a coach driver and a constable. Stiles v. Davis, 1 Black, 101, 17 L. Ed. 33. Accordingly, the changed conditions and changed conceptions of public policy emancipated the carrier from those alternatives, and prescribed a rule within which he could safely yield up goods claimed by writ of court.

In order to prevent the carrier's custody from being an effective

bar to the recovery of stolen goods, it had very early been held that, under any circumstances and irrespective of the issuance or validity of any writ, the carrier could excuse delivery to the named consignee by showing that he delivered instead to the person who was the true owner and the one really entitled to possession of the goods. Eytinge v. Atlantic Transport Co., 160 App. Div. 635, 145 N. Y. Supp. 1054; Western Transp. Co. v. Barber, 56 N. Y. 544; Mierson v. Hope, 32 N. Y. Super. Ct. 561, 573; Robinson v. Memphis & C. R. R. Co. (C. C.) 16 Fed. 57. In order, however, that the carrier might not be required, impromptu and at his peril, to decide whether the person suing out a writ was in fact the true owner, it came to be held in most jurisdictions that, irrespective whether the claimant by writ was the true owner, the carrier could justify his relinquishment of the property to an officer of the court and to a judicial determination of the consignee's and the claimant's title if (when sued by the consignee) he could show:

(1) That he delivered up the property in pursuance of a judicial writ which was regular and valid on its face. Kiff v. Old Colony & Newport Ry. Co., 117 Mass. 591, 19 Am. Rep. 429; Merz v. Chicago & N. W. Ry. Co., 86 Minn. 33, 90 N. W. 7; Bliven v. Hudson R. R. R. Co., 36 N. Y. 403.

(2) That he undertook and maintained the defense of the consignee's title against the writ, or that he gave immediate notice to the consignee of the seizure of the goods, and of the need that the consignee himself should act to defend the latter's claim to them. Spiegel v. Pacific Mail S. S. Co., 26 Misc. Rep. 414, 56 N. Y. Supp. 171; American Express Co. v. Mullins, 212 U. S. 311, 29 Sup. Ct. 381, 53 L. Ed. 525, 15 Ann. Cas. 536; The M. M. Chase (D. C.) 37 Fed. 708; Merz v. Chicago & N. W. Ry. Co., supra; Scranton v. Farmers' & M. Bank, 24 N. Y. 424, 427; Bliven v. Hudson R. R. R. Co., supra; Thomas v. Pacific Express Co., 73 Minn. 185, 75 N. W. 1120; Ohio & M. Ry. Co. v. Yohe, 51 Ind. 181, 19 Am. Rep. 727, and other cases hereinafter summarized.

(3) And that he (the carrier) lost custody of the goods without fraud, collusion, connivance, or consent on his part, but only through proper deference to the mandate of a judicial tribunal. American Express Co. v. Mullins, 212 U. S. 311, 29 Sup. Ct. 381, 53 L. Ed. 525, 15 Ann. Cas. 536; Stiles v. Davis, 1 Black, 101, 17 L. Ed. 33; Robinson v. Memphis & C. R. R. Co. (C. C.) 16 Fed. 57.

In other words, if confronted with a judicial writ valid and regular on its face, the carrier was entitled to yield up the goods to the court, and thereupon either tarry and defend the suit himself, or promptly notify the owner to defend and then go his way, leaving the question of title to judicial arbitrament. Only in the event that the carrier could show that he yielded custody to the true owner, could he justify any delivery through consent or connivance on his part, or otherwise than through a judicial determination in which he had maintained the consignee's interests or had seasonably called on the consignee to maintain them.

In the case at bar the carrier has not shown that it in fact delivered the fruit or the proceeds thereof to the rightful owner. Panno's busi-

ness dealings, while hardly commendable, were not fraudulent. The plaintiffs obtained good title to the goods by sale from Panno. Besides, the record is barren of proof that any fruit bought by Panno from the two Illinois concerns for whom Fechteg brought the replevin proceeding was in fact included in the car consigned to the plaintiffs. The carrier's assertion of the jus tertii accordingly fails.

Did the defendant carrier give seasonable notice to the consignee? The fruit was seized on November 1st, an order for its sale as highly perishable was obtained on November 2d, and it was sold on November 3d. The first notice or information to the consignees was given the following day, November 4th. Under all of the circumstances, including the known presence of the consignees but a short distance from the offices of the parties and their counsel, I do not believe that notice on November 4th was a reasonable compliance with the requirement of practically immediate notice. The essence of the requirement is notice before sale—notice in time that the consignee may seasonably assert and fully protect all its interests. Robinson v. Memphis & C. R. R. Co. (C. C.) 16 Fed. 57, holding notice must be "immediate"; The M. M. Chase (D. C.) 37 Fed. 708, holding notice on the third day after seizure insufficient; Bliven v. Hudson R. R. R. Co., 36 N. Y. 403, holding notice must be "prompt," and notice on the same day is sufficient; Frank Bros. v. R. R. Co., 9 Pa. Super. Ct. 129, holding 24 hours' delay not prejudicial; Ohio & M. Ry. Co. v. Yohe, 51 Ind. 181, 19 Am. Rep. 727, holding notice must be "immediate"; Furman v. C., R. I. & P. Ry. Co., 57 Iowa, 42, 10 N. W. 272; Id., 81 Iowa, 540, 46 N. W. 1049, holding notice must be "immediate," or in time to permit assertion of title before the goods are sold under the writ; and other cases cited supra. Notice after sale at a depreciated price, under an order obtained without notice to the consignee, whose claim to the fruit was stated in the affidavit, does not, under all circumstances of this case, protect the carrier for its failure to defend its custody and deliver the fruit to the consignee.

It remains to consider the novel question presented by the defendant's consent to the discontinuance of the replevin action, to the turning over of the proceeds of the fruit to Fechteg, and to the cancellation of the bond required by law for the consignee's protection. Did that stipulation offend against the rule that the carrier may not relinquish custody, to other than the true owner, through any connivance, collusion, or consent on its part, or through anything except a judicial determination in which the carrier either defends his consignee's claim or has seasonably notified the consignee to make its own defense therein? Consent to discontinuance of the replevin action and proceeding makes the same as though it had never been. Loeb v. Willis, 100 N. Y. 231, 3 N. E. 177. Of what avail, then, can the replevin writ of proceeding now be? If, while the action was pending between Fechteg and the carrier, it had been dismissed or determined adversely to Fechteg, would not the carrier have been called upon to regain possession and deliver to the consignee? Great Western R. R. Co. v. McComas, 33 Ill. 185; Faust v. South Car. R. R. Co., 8 S. C. 118. If, after the action had been started, Fechteg had appeared in court and consented to its discontinuance or dismissal, would not the

carrier be obliged to assert its right to possession and then make delivery under its bill of lading? Was not that the defendant's duty, under the facts above stated? May the carrier now justify under a writ which it consented to wipe out, and claim protection from an action which it discontinued and consented should never go to a judicial determination? The essence of the rule protecting the carrier when goods are seized by legal process is that the carrier is entitled to let the matter go to determination of the question of title by the court, rather than by the carrier and the claimant. Bennett v. American Express Co., 83 Me. 236, 22 Atl. 159, 13 L. R. A. 33, 23 Am. St. Rep. 774; Ohio & M. Ry. Co. v. Yohe, 51 Ind. 181, 19 Am. Rep. 727; Mierson v. Hope, 32 N. Y. Super. Ct. 561, 573; Stiles v. Davis, 1 Black, 101, 17 L. Ed. 33, and other cases cited, supra. Can it be said that there was such a determination here, or that the carrier did not incapacitate itself to deliver through "collusion, consent or connivance" on its part?

An interesting case, in view of the applicability of the federal rule (Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. [N. S.] 257; Davenport v. C. & O. Ry. Co., 87 Misc. Rep. 303, 149 N. Y. Supp. 865), is American Express Co. v. Mullins, 212 U. S. 311, 29 Sup. Ct. 381, 53 L. Ed. 525, 15 Ann. Cas. 536. The carrier in that case interposed an answer in the proceeding in which the goods were seized, and a demurrer to the answer was sustained. The consignee did not intervene, despite timely notice and its own assurance thereafter that it would defend, and the carrier apparently made no defense itself after the demurrer to its answer was sustained. The Kentucky Circuit Court (federal) held nevertheless that the judgment confirming the seizure in the carrier's possession was "in effect" obtained by the "consent, connivance or collusion of the carrier," but the Supreme Court held otherwise, in view of the answer, the demurrer thereto, and the judicial action thereon; saying, however, that:

"It is undoubtedly true that if the carrier, through connivance or fraud, permits a judgment to be rendered against it, such judgment cannot be invoked by it as a bar to an action brought by the owner of the goods. But there is nothing in the answer, a demurrer to which was sustained, indicating any consent, connivance, or fraud."

Although, in the case at bar, the carrier did not exactly "permit judgment" to be rendered against it by "collusion, connivance or consent," it even went so far as to stipulate in writing that the claimants might have the consignee's fruit *without a judgment* and *without even a default and inquest*. The claimants were never put to their proofs, even upon inquest; the proceeding was revived after it had been dismissed; there was no judicial hearing or determination; the bond given for the protection of the consignees was canceled; even the proceeding itself was wiped out (Loeb v. Willis, supra); and all this was done by the carrier's consent.

Moreover, the amount involved was manifestly not within the jurisdiction of the Municipal Court, as would have appeared on the face of the papers, had the matter gone to a judicial determination; and

the Illinois claimants could never have proved their ownership of any part of the fruit replevied. The affirmative act of the carrier, therefore, enabled the claimants to secure a result which they could not have secured through the legal adjudication which the rule of law manifestly contemplates, and the same stipulation canceled the bond which the law requires for the protection of the consignee in just such an emergency. These facts, together with the tardiness of the notice, bring the carrier outside the protection of the rule, because nondelivery to the consignees was the result, not of legal adjudication, but of acts amounting to "collusion, connivance or consent" on the part of the carrier. Even the consignee's failure to defend after notice could not justify the carrier in thus disposing of the matter by stipulation. Savannah Railroad Co. v. Wilcox, 48 Ga. 432, is not persuasive authority to the contrary.

In view of the conclusions above stated, it is unnecessary to consider further the question whether the writ of the Municipal Court was, under the circumstances indicated, valid and regular on its face.

Judgment may be entered for the plaintiffs for $1,057.50, with interest. The defendant may have 10 days' stay of execution and 30 days within which to make a case on appeal. Submit findings on 3 days' notice.