THE HAGLIN-STAHR COMPANY *v.* MONTPELIER & WELLS RIVER RAILROAD.

November Term, 1917.

Present: WATSON, C. J., HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed February 12, 1918.

*Carriers—Interstate Commerce—Liability of Common Carriers for Damages to Goods in Its Custody—Burden of Proof— Carmack Amendment—Bill of Lading—Claim for Damages —Depositions—Use by Either Party—Trial—Agreement of Counsel—Harmless Error—Damages.*

Where freight shipments are interstate the rights of the shipper and carrier depend wholly upon the Federal statutes, the bills of lading and the rules of the common law as accepted and applied in the Federal Courts.

*Prima facie* a common carrier, by accepting goods for transportation, incurs the responsibilities put upon him by the common law, or that law as modified by statute; and anyone asserting the contrary assumes the burden of proving it.

A common carrier is liable for loss or damage to goods in its custody unless caused by the act of God, the public enemies, the fault of the shipper, acts of competent authority, the inherent nature of

the property, or some cause against which it has lawfully contracted.

Upon showing that goods were delivered to a common carrier in good condition and that they arrived in bad condition, the carrier is conclusively presumed to be at fault, no matter how careful he has been, unless he shows that the damage resulted from one of the excepted causes.

Under the Carmack Amendment an initial carrier is liable for loss or damage to an interstate shipment, as it is under the common law, whether the loss or damage occurs upon its line or upon that of a connecting carrier.

The common law rule which requires a carrier who relies upon one of the exceptions to its liability as a defence to a claim for damages to establish the fact that such damages proximately resulted therefrom, is unaffected by the Carmack Amendment.

A provision in a bill of lading for filing a written claim for damage to a shipment within four months after delivery thereof is binding upon the shipper, when reasonable and not waived.

A deposition, taken under an agreement which indicates that it was contemplated that the instrument should be used by either party may be introduced in evidence by either party.

In an action against a common carrier to recover for injuries to a shipment, an argument by plaintiff's counsel to the effect that defendant had notice of the claim for damages prior to the filing of a written notice, as required by the bill of lading, was unwarranted, but, under the circumstances, harmless.

In an action against a common carrier to recover for injuries to a shipment, plaintiff is entitled to recover as damages a sum equal to simple interest at the lawful rate from the time of the arrival of the goods until the sitting of court, and not merely from the time of filing a written claim for damage as required by the bill of lading, this provision being only a matter of contract and, while essential to a recovery, affecting plaintiff's remedy only, and not his right.

CASE, to recover for injuries to a granite monument, delivered under a bill of lading to defendant as initial carrier, to be shipped from Barre, Vermont, to Waseca, Minnesota. Plea, the general issue. Trial by jury at the March Term, 1917, Washington County, *Miles*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*H. C. Shurtleff* for defendant.

*J. Ward Carver* for plaintiff.

POWERS, J.   The plaintiff is a partnership engaged in the granite business at Minneapolis.   The defendant is a common carrier doing business under a Vermont charter in both intrastate and interstate transportation.   At different times, the plaintiff delivered to the defendant two certain pieces of granite for shipment to itself at Waseca, Minn.   These shipments were received and forwarded over various connecting railroads under through bills of lading, each of which contained the following conditions:

"No carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, or the act or default of the shipper or owner.   In issuing this bill of lading this company agrees to transport only over its own line, and except as otherwise provided by law acts only as agent with respect to the portion of the route beyond its own line.

"No carrier shall be liable for loss, damage, or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next carrier, except as such liability is or may be imposed by law, but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed.

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence.   Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for de-

livery had elapsed.   Unless claims are so made the carrier shall not be liable.''

The plaintiff's evidence tended to show that the blocks of granite were in good condition when delivered to the defendant, and that when they arrived at Waseca they were broken and had to be replaced.   This action is brought to recover the damages so occasioned to the plaintiff.   Judgment below was for the plaintiff, and the case comes here on the defendant's exceptions.

The shipments being interstate, the rights of the parties depend wholly upon the Federal statutes, the bills of lading, and the rules of the common law as accepted and applied in the Federal Courts.   *Piper* v. *B. & M. Railroad*, 90 Vt. 176, 97 Atl. 508; *Cincinnati, N. O. & Tex. Pac. R. Co.* v. *Rankin*, 241 U. S. 319, 60 L. ed. 1022, 36 Sup. Ct. 555, L. R. A. 1917 A, 265. By the common law, a common carrier is answerable for every loss or damage happening to goods in his custody as carrier, by whatever cause occasioned, unless caused by the act of God or the public enemies.   *Blumenthal* v. *Brainerd*, 38 Vt. 402, 91 Am. Dec. 349; *Hall* v. *Nashville & Chattanooga R. Co.*, 80 U. S. (13 Wall.) 367, 20 L. ed. 594.   This exceptional liability is imposed from considerations of public policy, and is the law of this case, except so far as it may have been modified by the Carmack Amendment to the so-called Hepburn Act, or a valid contract made thereunder.

*Prima facie*, such a carrier, by accepting goods for transportation, incurs the responsibilities put upon him by the common law, or that law as modified by statute (*Park* v. *Preston*, 108 N. Y. 434, 15 N. E. 705); and any one asserting the contrary assumes the burden of proving it.   *N. J. Steam Nav. Co.* v. *Merchants Bk.*, 6 How. 334, 12 L. ed. 465.

While the common law rule is as above set forth, a comprehensive statement of the law as now generally recognized and accepted is that such a carrier is liable for such loss or damage unless caused by the act of God, the public enemies, the fault of the shipper, acts of public authority, the inherent nature of the property, or some cause against which he had lawfully contracted.   In speaking of this extraordinary liability of a common carrier, it should be constantly kept in mind that, while it is more or less customary to use the term "negligence" in speaking of it, the "prudent man" rule as commonly understood has no application.   All that it is necessary to show in order to estab-

lish *prima facie* liability is that the goods were delivered to the carrier in good condition, and that they arrived in bad condition. Upon such a showing, the carrier is conclusively presumed to be at fault unless he shows that the damage resulted from some of the causes above specified. No matter how careful he has been, his calling makes him liable for every loss not caused by the excepted perils. *Hall* v. *N. & C. R., supra.*

But it is insisted that the Carmack Amendment has restricted this liability,—at least so far as the initial carrier's responsibility for damages suffered after the goods were delivered to the connecting carrier is concerned, and that thereunder the initial carrier is liable for damages so occasioned only in case of negligence on the part of the connecting carrier. In other words, the claim is, that though the initial carrier may stand as an insurer so far as loss or injury on his own line is concerned, after he has delivered the property in good order to the connecting carrier, he is only liable for such loss or injury as may result from that carrier's negligence.

The provision of the statute is that a carrier who accepts a shipment for a point in another state shall be liable for any loss, damage or injury "caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass." U. S. Comp. St. 1916, par. 8604a. To support its position as to the true meaning of this provision, the defendant relies upon *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 57 L. ed. 314, 33 Sup. Ct. 148, 44 L. R. A. (N. S.) 257. It is true that this case has been sometimes accepted as authority for the position taken by the defendant, but this interpretation of it is unwarranted. The language used by Mr. Justice Lurton in discussing the statute in question, is as follows: "What is the liability imposed upon the carrier? It is a liability . . . . . . 'for any loss, damage or injury to such property caused by it,' or by any connecting carrier to whom the goods are delivered. The suggestion that an absolute liability exists for every loss, damage or injury, from any and every cause, would be to make such a carrier an absolute insurer, and liable for unavoidable loss or damage though due to uncontrollable forces. That this was the intent of Congress is not conceivable. To give such emphasis to the words 'any loss or damage,' would be to ignore the qualifying word 'caused by it.' The liability thus

imposed is limited to any 'loss, injury or danger caused by it or a succeeding carrier to whom the property may be delivered'; and plainly implies a liability for some default in its common law duty as a common carrier.''

It thus appears that the Court was talking about a liability as an *absolute* insurer, one liable without any exception, and did not intend to lay down a rule in any respect short of the common law rule. That a carrier could be guilty of some default in its common law duty, and at the same time not be guilty of negligence is quite apparent. For if it failed to carry safely it would be so in default, no matter how careful it had been. In speaking of the Carmack Amendment as thus construed, it was said by Mr. Justice McReynolds in *Cincinnati, etc., R. Co.* v. *Rankin*, 241 U. S. 319, 60 L. ed. 1022, 36 Sup. Ct. 555, L. R. A. 1917 A, 265: ''Properly understood, neither this nor any other of our opinions holds that this amendment has changed the common law doctrine theretofore approved by us in respect of a carrier's liability for loss occurring on its own line.''

This language, taken with that of Mr. Justice Lurton, quoted above, has given rise to the idea that there are two rules by which to measure the liability of an initial carrier,—one to use when the loss occurs on its own line, and the other when the loss occurs on the line of a connecting carrier. The idea is erroneous. It is clear from the language of Mr. Justice McReynolds that so far as loss or damage occurs on the lines of the initial carrier, his common law liability therefor is unaffected by the amendment. This was as far as the case then in hand required the Court to go. But in other cases it is made plain that the amendment extends this common law liability throughout the transit. In *Atlantic Coast Line R. Co.* v. *Riverside Mills*, 219 U. S. 186, 55 L. ed. 167, 31 Sup. Ct. 164, 31 L. R. A. (N. S.) 7, Mr. Justice Lurton says: ''Reduced to the final results, the Congress has said that a receiving carrier * * * * shall be deemed, when it receives property in one state to be transported to a point in another, involving the use of a connecting carrier for some part of the way, to have adopted such other carrier as its agent, and to incur carrier liability throughout the entire route * * * *.''

It is plain enough that the ''carrier liability'' here spoken of is the common law liability as hereinbefore stated. Again, in *Galveston, etc. Ry. Co.* v. *Wallace*, 223 U. S. 481, 56 L. ed. 516, 32 Sup. Ct. 205, Mr. Justice Lamar, in speaking of the initial

carrier's liability, says: "It (the initial carrier) thereby elected to treat connecting carriers as its agents for all purposes of transportation and delivery. This case, then, must be treated as though the point of destination was on its own line, and is to be governed by the same rules of pleading, practice and presumption as would have applied if the shipment had been between stations in different states, but both on the company's railroad."

Surely, this statement can be justified only on the ground that the initial carrier's common law obligations continue throughout the chain of transportation. Other cases to the same effect are *Missouri, K. & T. Co.* v. *Harriman,* 227 U. S. 657, 57 L. ed. 690, 33 Sup. Ct. 397; *Collins* v. *Denver & R. G. Ry. Co.,* 181 Mo. App. 213, 167 S. W. 1178; *Storm Lake, etc. Factory* v. *St. L. R. Co.,* (D. C.) 209 Fed. 895; *Georgia, etc. R. Co.* v. *Blish Milling Co.,* 241 U. S. 190, 60 L. ed. 948, 36 Sup. Ct. 541. This defendant, then, is liable for the damage here shown, unless it resulted from some of the excepted causes above specified.

When a carrier relied upon one of these exceptions as a defence, the common law required him to establish the fact that the damages proximately resulted therefrom. *Jonesboro, etc. Co.* v. *Dunnavant,* 117 Ark. 451, 174 S. W. 1187; *St. Louis, etc. R. Co.* v. *Dreyfus,* 42 Okl. 401, 141 Pac. 733, L. R. A. 1915 D, 547; *Chicago, etc. R. Co.* v. *Logan, Snow & Co.,* 23 Okl. 707, 105 Pac. 343, 29 L. R. A. (N. S.) 683, and note; *Day* v. *Ridley,* 16 Vt: 48, 42 Am. Dec. 489; *Bennett* v. *Am. Express Co.,* 83 Me. 236, 22 Atl. 159, 13 L. R. A. 33, 23 Am. St. Rep. 774; *Cudahy Packing Co.* v. *Atchinson T. & S. F. R. Co.,* 193 Mo. App. 572, 187 S. W. 149. This rule is unaffected by the Carmack Amendment. *Galveston, etc. R. Co.* v. *Wallace, supra,* is full authority for this statement. After stating what is hereinbefore quoted, the Court goes on to say: "Thus considered, when the holders of the bills of lading proved the goods had not been delivered to the consignee, the presumption arose that they had been lost by reason of the negligence of the carrier or its agents. The burden of proof that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract was then cast upon the carrier. The plaintiffs were not obliged to prove their case and to disprove the existence of a defence. The carrier and its agents, having received possession of the goods, were charged with the duty of delivering them or explaining why that had not been done. This must be so, because carriers not only

have better means, but often the only means of making such proof. If the failure to deliver was due to the act of God, the public enemy, or some cause against which it might lawfully contract, it was for the carrier to bring itself within such exception. In the absence of such proof, the plaintiffs were entitled to recover.''

Assuming that the defendant here produced evidence tending to show that the damage involved in this suit resulted from a legally excepted cause, that only made questions for the jury to decide, and the plaintiff's verdict made an end of it. The burden was on the defendant, and it simply failed in the proof.

An application of the foregoing rules to the case in hand disposes of most of the questions relied upon by the defendant, including its motion for a verdict. Specific reference to such is unnecessary. One or two points made require special treatment.

As we have seen, the bills of lading contained a provision for the filing of written claims within four months after delivery of the consignments. That such provisions are binding upon the shipper when reasonable and not waived is fully established. *Georgia, F. & A. R. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 60 L. ed. 948, 36 Sup. Ct. 541; *Northern Pacific R. Co.* v. *Wall*, 241 U. S. 87, 60 L. ed. 905, 36 Sup. Ct. 493; *Chesapeake, etc. R. Co.* v. *McLaughlin*, 242 U. S. 142, 61 L. ed. 207, 37 Sup. Ct. 40; *St. Louis, etc. Ry. Co.* v. *Starbird*, 243 U. S. 592, 61 L. ed. 917, 37 Sup. Ct. 462. The only evidence of a compliance with this requirement came into the case by way of the admission of a question and answer in the deposition of the station agent of the delivering carrier, to which the defendant excepted. It appears that this deposition was taken at Waseca by agreement of counsel. It is stated in the bill of exceptions that the plaintiff took this deposition and that the defendant did not cross examine the witness, but made him its own witness, and asked him when the claims for damages were first presented to the delivering carrier. He answered that it was in the first part of January, 1911, which would be within the time limited in the bills of lading. In support of its exception to the admission of this evidence, the defendant argues that that part of the deposition was its own, and it alone could say whether it should be used in evidence or not, citing *Lord* v. *Bishop*, 16 Vt. 110; *Wait* v. *Brewster*, 31 Vt. 516, and *Wing* v. *Hall*, 47 Vt. 182. If it were necessary to pass upon the soundness of these cases as applied to present-day

conditions, we should proceed with some caution. There is much good sense in the opinion in *Taylor* v. *Thomas,* 77 N. H. 410, 92 Atl. 740, wherein a previous decision of that court in harmony with our cases above was overruled and the rule established that either party could use a deposition taken for use in a case pending in court. But the deposition before us does not stand like the ordinary deposition taken on notice. It was taken by agreement, and such a deposition may be used by either party. *Western Union Tel. Co.* v. *Hanler,* 85 Ark. 263, 107 S. W. 1168. The agreement under which this deposition was taken indicates that it was contemplated at that time that the instrument should be used by either party. The exception is not sustained.

The argument of plaintiff's counsel to the effect that the defendant had notice of the claims for damages prior to the filing of the written notices was unwarranted, but harmless. The court charged correctly on that subject and prejudice does not appear.

The plaintiff was allowed to recover as damages a sum equal to simple interest at the lawful rate from the time of the arrival of the goods at their destination to the time of the sitting of the trial court. To this, the defendant excepted on the ground that interest would not begin to run until the written notice was filed. But for the requirement of notice, the rule applied by the court was undoubtedly correct. *Blumenthal* v. *Brainard, supra.* It is true that any condition precedent must be performed, whether it be prescribed by statute, by agreement, or by implication from circumstances. It may operate on the right itself, as when a statute creates a new right to which a condition is annexed; or it may operate merely as a limitation upon the remedy. In the former case, its performance constitutes an essential element of the cause of action; in the latter it does not prevent the accrual of the right of action, but merely stalls the remedy thereon. The written claim required by the bills of lading is a mere matter of contract. It is essential to a recovery but only affects the plaintiff's remedy, and interest was properly allowed from the time of delivery. *Robinson Bros.* v. *Merchants Dispatch Trans. Co.,* 45 Ia. 470.

*Judgment affirmed.*