DAVIS, executor, *v.* DODSON & MOON, and *vice versa.*

1. It is not within the scope of the business of a law partnership to collect *choses in action* without charging for services rendered in so doing. Therefore, where one member of such a firm, being the owner of a promissory note, sold it to a third person, a part of the consideration of the sale being that the seller's firm would collect the note without charge, this contract was not binding upon another member of the firm. The seller had no power, by virtue of the partnership, to bind his partner by any such contract; and as to the latter, it was also without consideration.

2. The verdict was demanded by the evidence, and the newly discovered evidence was not such as ought to change the result.

April 1, 1895. By two Justices. Brought forward from the last term.

Complaint. Before Judge HENRY. Walker superior court. August term, 1893.

COPELAND & JACKSON, for plaintiff.

PAYNE & WALKER, for defendants.

LUMPKIN, Justice.

The plaintiff below, Davis, as executor of Hall, sued out an attachment against Dodson & Moon, a non-resi-

dent firm of attorneys at law, which attachment was levied upon land in Walker county as the property of Moon, one of the defendants. The case made by the declaration in attachment as amended was, in substance, as follows: The defendants, as attorneys at law, received for collection from the plaintiff's testator a promissory note, at the same time giving him a receipt in the following words:

"Chattanooga, Tenn., Dec. 23d, 1886.

"Received of S. P. Hall a note on Larkin Payne, payable to E. M. Dodson and indorsed by him, for fifteen hundred dollars, dated the 7th day of March, 1886, and due 12 months after date, with interest at the rate of 7 per cent. per annum from date, and secured by a deed of trust on 230 acres of land, the home place of said Payne, made to said Dodson as trustee, with power of sale. If said note is not paid at maturity, we agree to foreclose the deed of trust by the first Tuesday in May, 1887, free of cost to Mr. Hall, and not to charge him any fees, this being the agreement under which he purchased said note and deed of trust.

"Dodson & Moon, Attys. at Law."

The money due upon the note specified in the foregoing receipt was collected by the defendants, who failed and refused to pay the same over to the plaintiff.

The defendant Moon pleaded, in substance, that he did not sign the receipt; that it was not signed by any one authorized by him; that neither he, nor the firm of Dodson & Moon as such, ever had the possession, custody or control, for collection or otherwise, of any such note or paper as was described in this receipt; nor did he or his firm, at any time or in any manner, collect or receive any money thereon, either as attorneys at law or otherwise; but that the giving of the receipt was the individual act of Dodson, for which neither Moon nor the firm was in any manner responsible.

At the trial, the plaintiff offered evidence to show that the receipt in question was signed by Dodson in

the name of his firm, and that he afterwards collected the money due on the note, giving therefor receipts signed by him individually, and had failed to account for the money collected. No evidence whatever was introduced to show that Moon ever had any knowledge of the transaction, or had ever ratified the giving of the receipt to Hall. Nor was it shown that Moon ever had personal possession of the note, or recognized its possession by his firm, or that he took part in, or knew of, its collection by Dodson. On the contrary, as the receipt would seem to indicate, the truth of the matter probably was, that Dodson traded to Hall a note payable to himself and which he held in his individual capacity; and as an inducement to Hall to purchase the same, undertook by the receipt to bind the firm of Dodson & Moon to collect the note free of charge. If the effect of giving the receipt was to obligate that firm to perform the service indicated, it is obvious that it would make no difference that Moon never took any active part in, or even knew of, the collection and misapplication of the money due on the note; for he would be responsible and liable for every act of Dodson while acting within the scope of his authority as a member of the partnership. Therefore the question presents itself, whether Dodson, by virtue of his general authority to represent his firm, could, in a transaction such as that disclosed by the record now before us, make a contract binding alike upon his partner and himself as composing the firm of Dodson & Moon.

We do not see how it can be seriously contended that it is within the scope of the authority of one member of a partnership, in a private transaction between himself and another, and in consideration of a benefit bestowed upon himself alone, and not shared in by his partner, to undertake to bind his firm to any agreement whatsoever. In a transaction of this kind, he would

be acting solely in his individual capacity, and not as a member of his firm. We had thought it a very universally recognized fact that lawyers are in the habit of charging their clients for services, and that the main object of forming law partnerships was the avowed purpose of reaping a goodly harvest of fees. In fact, complaint has frequently been made that lawyers are sometimes too diligent and over-zealous reapers. But in all seriousness, it would defeat the very object for which a law partnership was formed, if one of its several members were allowed, without the express assent of the others, to undertake to bind the firm to perform legal services, without compensation either for the actual time and labor necessary to be expended, or for the responsibility and liability the firm would incur by the undertaking. Certainly it is the right of an attorney, acting for himself alone, as a matter of charity or friendship, to collect a paper for another without charging a fee for his services; but the present case sufficiently demonstrates how serious and unjust a matter it would be if an attorney were permitted to thus bind his partner, without his consent, and with no remuneration for the risk incurred. We have yet to see the rare spectacle of an attorney at law, or a firm of them, rendering professional services gratuitously as a recognized and customary incident of the business in which they engage. We have long ago departed from the *honorarium* from which our ancient ancestors in this noble profession either wholly or partially derived their means of subsistence.

Under the facts shown on the trial, therefore, we have no hesitancy in saying, the plaintiff failed utterly to make out a case. It was contended by counsel, however, that in the light of certain evidence shown to have been discovered since the trial, a different result would be inevitable if a new trial were granted. The evidence relied on was a certain contract purporting to have

been entered into between Dodson and Payne, and explaining how the former came into possession of the note sold to Hall, as follows:

"This agreement, made the 1st day of March, 1886, witnesseth, that Larkin Payne has this day given E. M. Dodson his note for the sum of fifteen hundred dollars, which is to become due one year after date, and has made a deed of trust on his lands in Dade county, Ga., to secure the same. The agreement between us is, that said Dodson is to negotiate said note to the best advantage possible, and for this purpose is to indorse the same if necessary, and is to apply the proceeds of the note as follows: A judgment of about the sum of $350.00 in the superior court of Dade county, in favor of the estate of E. W. Forester deceased, now controlled by M. A. B. Tatum; whatever interest may be found in settlement to be due from me (Payne) to Wm. Glass on the mortgage heretofore given to him, if any; any balance of fees that I may be owing to said Dodson or to Dodson & Moon; and the balance he will pay over to said Payne. Nothing will be paid to William Glass until further order from said Payne.                                    E. M. Dodson.
"This 1st of March, 1886.                    Larkin Payne."

Instead of being impressed that this paper would aid the plaintiff's case, we are the more strongly convinced that in no sense, either legally or morally, is Moon liable for the misapplication by Dodson of the money which the latter collected upon the note entrusted to him by the plaintiff's testator.  Under this contract, it is plain that Dodson, in his individual capacity, became the trustee of Payne to raise money upon the note and apply it as directed.  Certainly, it was not an undertaking on the part of the firm of Dodson & Moon, and Payne could not have held that firm liable in the event Dodson violated the trust.  The mere fact that Dodson & Moon were named among the beneficiaries thereunder amounts to nothing; for it might as well be said that either of the other beneficiaries named in the instrument thereby became responsible for Dodson's execution of the trust,

simply because a benefit would be conferred upon him by its faithful performance on the part of Dodson.

The only effect of this paper upon the present case is to show that Dodson, instead of owning absolutely and in his own right the note he traded to Hall, at that time simply held it in trust for Payne for the purpose of negotiation, etc.  With the performance of the personal and private obligations of Dodson, his firm had nothing to do; so we think the newly discovered evidence is favorable to the defendant rather than to the plaintiff, for it clears up the last doubt as to whether Dodson & Moon owned the note at the time it was traded to Hall, or had any interest in that transaction.

<em>Judgment affirmed.    Cross-bill dismissed.</em>