FREDERICK C. GRATWICK, Appellant, *v.* CARL H. SMITH, Respondent.

Fourth Department, June 30, 1922.

Conversion — action by one member of alleged law partnership against another for conversion of check payable to firm — defendant acting as executor of third partner — defendant liable personally if he converted check — witnesses — competency — plaintiff not incompetent under Code of Civil Procedure, § 829 (Civil Practice Act, § 347), to testify as to conversations with deceased partner showing partnership relation — effect of testimony was to show that defendant was not partner and to increase share of estate of deceased partner in check — existence of partnership may be established by oral evidence.

Where a member of a former law partnership, who was appointed executor of a deceased partner, receives a check payable to the firm and illegally converts it to the estate of the deceased partner, his act is a personal one and not representative, and creates a cause of action, not against the estate of the deceased partner, but against himself individually.

In an action for conversion brought by one member of an alleged law partnership against another after the death of a third member, to recover the amount of a check made payable to the firm and delivered to the defendant who cashed the same and deposited the proceeds to his credit as executor for the third member of the firm, the plaintiff was not incompetent under section 829 of the Code of Civil Procedure (Civil Practice Act, § 347) to testify concerning conversations had with the deceased member, the effect of which was to show a partnership relation between the plaintiff and the deceased member to the exclusion of the defendant, and thereby increase the share of the deceased member's estate in the check in question.

The existence of the partnership between the plaintiff and the decedent could be established by oral evidence and plaintiff might testify to ownership of the check by himself as surviving partner to establish title as against the defendant.

KRUSE, P. J., and SEARS, J., dissent.

APPEAL by the plaintiff, Frederick C. Gratwick, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 17th day of February, 1922, upon the report of a referee appointed to hear and determine the issues, dismissing the complaint on the merits.

*Parton Swift,* for the appellant.

*Kellogg, Babcock & Sullivan* [*Ralph A. Kellogg* of counsel], for the respondent.

DAVIS, J.:

Prior to August 28, 1912, three attorneys, Carl T. Chester, the defendant and the plaintiff, occupying offices at 914 Ellicott square in Buffalo, were doing business in the name of Chester, Smith & Gratwick. That name was on the office door, on their stationery and on legal papers in actions or proceedings conducted by them.

In the years 1906 and 1907 Mr. Chester and Mr. Smith in the name of the firm conducted a proceeding in the Erie County Surrogate's Court to probate the will of Pendennis White, deceased. Under date of July, 1907, a bill for $5,000 was rendered by the firm against said estate for such legal services.

Mr. Chester died August 28, 1912, leaving a last will and testament in which Carl H. Smith, one of the reputed members of the firm, was named executor. This will was duly admitted to probate. Payment for the legal services aforesaid had not then been made. On December 20, 1920, the attorneys then representing the executor of the White estate paid the bill by a check for $7,508.33 (which included interest on the original claim), payable to the order of Chester, Smith & Gratwick, and delivered it to Mr. Smith. The latter indorsed the check in the name of the firm and also as executor, and deposited it in a bank to his account as executor. Before he received the check he was informed that the plaintiff claimed a one-half interest in it, and the check and the proceeds thereof were duly demanded by the plaintiff after its delivery to Smith.

This action is brought against Smith individually for the conversion of said check and its proceeds. While there is some discussion in the respondent's brief as to the form of the action, on the plaintiff's theory of the case the practice was correct. If the defendant's act in taking the check and retaining it and its avails was illegal, his act was a personal one and not representative, and created a cause of action not against the estate of the decedent but against himself individually. (*Kelsey* v. *Distler,* 141 App. Div. 78; *Matter of Van Slooten* v. *Dodge,* 145 N. Y. 327.) The plaintiff claims the right of possession as the surviving partner of Chester & Gratwick, alleging as to this and other transactions in which he was interested Smith was not a partner, and had no interest in the compensation received in that matter and had no right to the possession of the check.

The trial was before a referee. Findings were made and the plaintiff's complaint dismissed. On this appeal the only question requiring serious consideration is, whether certain evidence offered by the plaintiff was competent on the issues presented.

The plaintiff undertook to show by his own testimony that there was no written agreement as to a copartnership, but that in 1905 Chester and he entered into a parol agreement, and he gave the conversations wherein it was agreed that they should become partners in the practice of law in a somewhat limited way. The legal business of certain members and relatives of the Gratwick family for whom Chester had theretofore been attorney, together with such other business as plaintiff should bring into the office, should be regarded as a partnership affair, and the net compensation should be shared equally between them, while the business of old clients of Chester's and such as naturally came to him should be his individual business. Plaintiff was to contribute annually to the office expenses a sum fixed by Chester at $1,000. Another room was taken for a private office for plaintiff and he also had the use of the other offices. The firm name as decided by Chester was to be " Chester, Smith & Gratwick." Prior to that time the firm name had been Chester & Smith, and it appears that there was a somewhat similar agreement between those two individuals. There was no common ownership in the library or office fixtures, and plaintiff was not a party to the lease of the office.

The plaintiff gave further testimony without objection that the work of clients in which he had an interest was done sometimes by himself alone and sometimes by Chester alone; but that in all cases the money, no matter by whom received, was equally divided after deductions for expenses or other disbursements had been made.

The portion of the evidence subject to attack was principally the conversation establishing the copartnership. This was objected to as incompetent under section 829 of the Code of Civil Procedure.* The referee first received the evidence as to the agreement between Chester and Gratwick, and then on defendant's motion, after due deliberation, struck it out.

We think the evidence was competent and it was error to strike it out.

The plaintiff in his own right is suing the defendant individually and he makes no claim against the estate of Chester. The action is brought primarily to determine the right of possession of a check payable to a firm. When a firm has been dissolved by the death of

---

*Now Civ. Prac. Act, § 347.— [REP.

one of its members, the right of the survivor to the exclusive possession of debts, choses in action and assets of the firm is well established.  He has the right and authority to collect the firm indebtedness and must account to the representative of the deceased partner.  (*Murray* v. *Mumford,* 6 Cow. 441; *King* v. *Leighton,* 100 N. Y. 386, 392; *Secor* v. *Pendleton,* 47 Hun, 281, 285; 30 Cyc. 622.)

That there was a partnership of some kind is presumptively established by the facts as narrated and by the testimony of Chester given in Surrogate's Court in *Matter of White's Estate,* read into this record.  The check is payable to a partnership consisting of three persons.  The plaintiff seeks to eliminate Smith, one of the three, from the right to possess the firm assets and ultimately from participation in the division of the joint property.  The defendant seeks to eliminate both himself and the plaintiff from such rights.  Both are making claim to a fund that primarily belongs not to the deceased person but to a copartnership, an entirely separate entity from that of the individual members.  The title which each asserts is derived from the firm.  If the title of defendant is not derived from the deceased person, evidence of personal transactions between plaintiff and such deceased person showing the source and extent of his title is not incompetent.  (*Lyon* v. *Whittaker,* 77 Hun, 107; *Foley* v. *New York Savings Bank,* 157 App. Div. 868, 872; *Mason* v. *Prendergast,* 120 N. Y. 536; 40 Cyc. 2301, 2302.)

A copartnership between lawyers differs in many respects from the ordinary mercantile copartnership where capital must be invested in the place in which business is transacted, in fixtures and in stock, and where merchandise is bought and sold, profits made and losses encountered.  In law partnerships, expenses are shared but losses as commonly understood are unknown.  They join in rendering legal services for pay which they share.  It is common knowledge in the profession that often among law partners there is no joint ownership in property, such as a library and office fixtures.  Very often, too, individual members in a law firm have separate business or professional interests, and have clients paying them individual retainers which may or may not be divided among the members of the firm, according to the agreement they have originally made.  These conditions make the partnership easily dissoluable.  They are none the less partners in those matters or causes which they undertake jointly or which their agreement makes a joint enterprise, although they divide the work among themselves separately, sharing the common product of their services.  There is nothing essentially improbable in the plaintiff's claim as to the terms of the copartnership agreement he seeks to establish.

In a partnership between lawyers each member of the firm assumes the duty of giving to the partnership business all his time, skill and ability as far as reasonably necessary to the success of the common enterprise; and in the absence of an express agreement to the contrary, any professional services rendered by a member of a firm of lawyers will be presumed to be for the benefit of the firm. (*Roth* v. *Boies*, 139 Iowa, 253; *MacFarland* v. *Altschuler*, 77 Neb. 138; 6 C. J. 627.) The law implies equality between partners, and there is no implied obligation that for performing certain work one should be paid more than his proportionate share of the gains. Neglect by one to do his part may be of such a character as to justify dissolution, but as long as the firm continues there is usually no deduction because one partner has not been as active as the others. (*Consaul* v. *Cummings*, 222 U. S. 262.)

With these general principles in mind, the presumption readily arises that when the check was delivered, each of the parties named on its face had an equal share therein. To overcome this presumption the person disputing it was bound to offer sufficient proof to establish some contrary fact.

This check was in payment for services rendered in the name of the firm. It does not appear to be the individual property of Chester. If it came into the hands of Smith as one of the surviving members of the firm, he was charged with the duty of accounting for it to the living members of the firm and the representative of the deceased. If he was not one of the surviving partners interested in this fund, then it was his duty to deliver it over to one who was, and let him assume the duty of accounting. The position of Smith as executor clothed him with no extra judicial power of determining *ex parte* the legal question as to whether the relation of the plaintiff and Chester was that of partners or that this check apparently belonging to a firm of three men, in fact belonged to one alone. He might decide that he had no interest in it himself, but if he assumed the responsibility of deciding that Gratwick had none, he did so at his peril and rendered himself liable for conversion.

As already stated, the plaintiff is not making a claim against the estate, nor *prima facie* is the defendant claiming from, through or under the deceased person, but from the firm. This presents an entirely different situation from that where the apparent title or right of possession of property is in the decedent's estate and the claimant attempts by testimony showing a personal transaction with the decedent to establish a hostile title in himself. *Mullins* v. *Chickering* (110 N. Y. 513) and *Levy* v. *Louvre Realty Co.* (222 id. 14), cited by respondent, present such a state of facts. To make

applicable the provisions of section 829 of the Code of Civil Procedure in excluding evidence, there must be something more than a bare assertion of a title in a decedent's estate; there must be at least color of title or possession rightfully obtained.   To make the evidence incompetent it must be within the letter of the statute. (*Severn* v. *National State Bank of Troy,* 18 Hun, 228; *Riordan* v. *First Presbyterian Church,* 6 Misc. Rep. 84.)   It is not enough that an executor has seized property apparently belonging to others, and makes claim to it in behalf of the estate.   If the defendant asserts a claim to a chose in action or a fund apparently belonging to others, he as executor and residuary legatee assumes the burden of proving title.

The immediate effect of the testimony stricken out is not to make a claim against Chester's estate or to diminish his apparent interest in the firm check.   Rather, the evidence tends to eliminate any interest of Smith in the check, by establishing that Smith and Gratwick were not partners, and that this check arose out of a transaction in which Chester and Gratwick were partners.   It thereby increased the apparent interest of Chester in the fund in dispute.   If the evidence had tended to decrease the interest of Chester's estate therein or to relieve Gratwick of liability, it would not, of course, have been competent.   (*Hunter* v. *Herrick,* 26 Hun, 272; affd., 92 N. Y. 626.)

The existence of the partnership between Chester and Gratwick could be established by oral evidence (30 Cyc. 404); and plaintiff might testify to the fact of ownership of the check by himself as surviving partner to establish title as against Smith. (*De Wolf* v. *Williams,* 69 N. Y. 621; *Pichler* v. *Reese,* 171 id. 577.)

There is evidence on the part of the defendant that casts doubt on the existence of the partnership and the right of the plaintiff to share in the fund in question.   It is the claim of the defendant, and the referee states that it is his opinion, that the agreement was only one as to commissions or allowances for business obtained. On the present state of the record we do not assume to pass on those questions of fact.   We confine our decision to the legal question presented, and hold the plaintiff was entitled to have the evidence he offered received and considered in determining the issue between the parties.   It was material on his theory of the case.   We will not speculate on what weight it would have had on the mind of the trier of the fact.   It was stricken out and, therefore, could not have been properly taken into consideration by the referee, whose findings were, of course, made on the evidence before him.

The judgment should be reversed and a new trial granted before

another referee, with costs to the appellant to abide the result of the action.

All concur, except KRUSE, P. J., and SEARS, J., who dissent on the authority of *Mullins* v. *Chickering* (110 N. Y. 513).

Judgment reversed on question of law and new trial granted before another referee, with costs to appellant to abide event.