RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent.

No. 29. Argued January 15, 1945.—Decided May 21, 1945.

*Jesús A. González, Acting Attorney General,* and *A. D. Marchand Paz, Deputy Attorney General,* for petitioner. *Otero Suro & Otero Suro,* and *Dubón & Ochoteco* for intervener, defendant in the main action.

Mr. Justice De Jesús delivered the opinion of the court.

Dubón & Ochoteco, a law firm, declared a net income of $60,016.23 for the taxable year 1941, and claimed deductions for that same amount. On August 6, 1943, the Treasurer sent the taxpayer a deficiency bill for $4,142.55 for that same year plus interest at 6 per cent since March 15, 1942, to September 15, 1943, amounting to $372.83, and a penalty of 5 per cent amounting to $207.13, the whole amount being $4,722.51.

In order to determine that deficiency the Treasurer rejected from the deductions claimed by the firm, the amount of two hundred dollars as contribution to the United Service Organizations and other institutions and the amount of $22,814.14, equally distributed between Luis E. Dubón and Félix Ochoteco, Jr., the only members of the firm, as additional compensation for personal services actually rendered by them to the firm. A reconsideration was sought and it having been denied, the taxpayer appealed to the Tax Court of Puerto Rico. The latter affirmed the Treasurer's decision in so far as it denied the deduction of two hundred dollars for contributions, and reversed it in so far as it rejected the deduction of the $22,814.14 and the penalty of five per cent.

The Treasurer appealed to this court from that part of the decision which granted the deduction of $22,814.14 and alleged that said amount distributed between the members was not deductible because it constituted a distribution of profits. As to the amount of $12,000 which each member received as salary originally fixed, the Treasurer puts up no claim and expressly admits said deduction as valid, but con-

tends that the amount of $22,814.14 alleged by the firm to have been distributed as additional compensation, constitutes a distribution of profits.

The taxpayer assumes the position that a law firm can not legally exist because said profession may only be practiced by natural persons duly admitted to the bar, and since the *sociedad* is not a natural person, and therefore, is not entitled to practice, there is no valid *sociedad* in contemplation of § 2(a)(3) of the Income Tax Law, as amended by Act No. 31 of April 12, 1941 (Laws of 1941, p. 478). But even though it maintains that the firm Dubón & Ochoteco is not a *sociedad* as contemplated by § 2(a)(3) yet, inconsistently [1] with said position, it argues that it is entitled to deduct the amount of $22,814.14 as additional compensation for services actually rendered and not as a distribution of profits.

The contention of the Treasurer is that the law firm Dubón & Ochoteco is not a professional *sociedad* because a *sociedad* can not practice the legal profession, but that it is a universal civil *sociedad* of all the profits, to wit: the fees received by its members for the professional services which they render respectively to their clients, and that since the amount of $22,814.14 paid to the members, is, in his opinion, a distribution of profits, said amount is subject to income tax.

The parties devoted a considerable part of their briefs in an attempt to show that a law firm, due to the nature of its object—the practice of law and the notarial profession—cannot legally constitute a *sociedad*.

In the Tax Court the taxpayer offered the testimony of the partner Luis F. Dubón who testified that in 1941 he agreed with his partner Félix Ochoteco, Jr., to fix a monthly salary of one thousand dollars to each one of them, on condition that it should be increased or reduced according to

---

[1] If Dubón & Ochoteco is not a *sociedad* under § 2(a)(3), how is it then entitled to deduct any amount as salary for the partners?

the reasonable value of the services which each one of them should actually render, and later, considering that said services were worthy of an additional salary, they equally distributed the amount of $22,814.14, which added to their original salary did not exceed, in their opinion, the reasonable value of the services actually rendered by each one of them.

The Treasurer offered no evidence in support of his contention. On the contrary, he expressly admitted that the total amount of $23,407.07—composed of the alleged salary, $12,000, and the additional compensation of $11,407.07—which each one of them received, had they received it as compensation for services rendered, the same, and even a greater amount, would have been reasonable. In his brief in this court the Treasurer ratified this statement, but insisted however, in that, the so-called additional compensation constituted a distribution of profits and not a payment of salary.

■■ The first question to be determined is whether a *sociedad* of lawyers whose object is the practice of the legal profession is subject to the tax imposed by § 28(a) of the Income Tax Law,[2] which levies on domestic partnerships (*sociedades*) and corporations a tax of twenty per cent on their net income and on foreign partnerships (*sociedades*) and corporations a tax of twenty-two per cent.[3]

Pursuant to § 2(a)(3) of the Act the term *"sociedad"* includes "civil, business, industrial, agricultural and *professional* partnerships (*sociedades*) or of any other kind, whether or not its constitution is set forth by public deed or private document," (italics ours), and it includes further two or more persons, whether or not under a common name, engaged in a joint venture for profit.

---

[2] As amended in the Third Special Session of 1942 by Act No. 20 of December 3, 1942 (Second and Third Special Sessions, p. 96).

[3] In *Treasurer v. Tax Court*, 64 P.R.R. 575, decided on March 5, 1945, this court declared unconstitutional the difference of tax rate between domestic and foreign corporations authorized to do business in Puerto Rico.

The professional *sociedades* are expressly recognized by § 1569 of the Civil Code (1930 ed.) which provides:

"A particular partnership (*sociedad*) has for its object specified things only, their use or profits, or a specified undertaking, or *the exercise of a profession* or art." (Italics ours.)

We have already pointed out that the Treasurer as well as the taxpayer insisted that a law firm has no legal existence because said profession can only be practiced by natural persons, and that when a *sociedad* is constituted, a legal person or entity different from its members is created and that a juridical person thus created cannot practice the profession of law.

It is true that the *sociedad* in our law constitutes a legal entity different from its members and it being a legal person, the *sociedad* in itself can not be admitted to the bar.

The Civil Code authorizes the constitution of *sociedades* for the exercise of a profession.[4] But although the *sociedad* by legal fiction, is a person independent of the members composing it [5] by reason of its being an artificial and intangible creature, it may only act through its members. For this reason, when a *sociedad* is constituted for the practice of law, the fact is that the lawyers composing it and not the legal entity, practice the profession. But since the law forbids the practice of law by those who have not been admitted to the bar by the Supreme Court, in order that the *sociedad* should have a legal object [6] each and every one of its members must be lawyers duly admitted to the bar. To stretch legal fiction to the extent the parties pretend, insisting that a law firm has no legal existence because the *sociedad* is not a natural person with capacity to be admitted to the bar, is to convert into dead letter § 1569 of the Civil Code, which authorizes the constitution of professional *sociedades*, as in any professional *sociedad* the *sociedad* in itself as a legal en-

---

[4] Civil Code, § 1569.
[5] Civil Code, § 27.
[6] Civil Code, § 1557.

14

tity may not practice the profession except through its members. The law does not forbid, nor is it contrary to public policy or good morals, that two or more lawyers duly authorized to practice their profession should agree to joint their talent, skill, and professional ability in order to share the fees.[7] The law firm is an institution which is deep rooted in our law, and its legality has never been questioned until the filing of the present case.

The fact that the professional fees are collected in the name of the *sociedad* as alleged by the taxpayer, is a circumstance which does not affect the attorney who renders them or the client who pays,. and it is not contrary to law, public policy or good morals. *Gratwick* v. *Smith,* 202 App. Div. 600, 604 (N. Y., 1922); *Harland* v. *Lilienthal,* 53 N. Y. 438 (1873).

Planiol-Ripert, in their work *Derecho Civil Francés,* vol. 11; p. 267, upon dealing with the legal object that every *sociedad* should have, enumerate among the legal *sociedades,* without stating any reason therefor, the *sociedad* of attorneys at law. The same authors cite as an illegal *sociedad* one made to practice pharmacy between one or more pharmacists and one or more persons not authorized to practice that profession. It may be inferred *a contrario sensu* that if all the members were pharmacists, the object of the *sociedad* would be legal. Why should the same principle not be applied to a *sociedad* of attorneys at law when all its members have been duly admitted to the bar?[8]

Colin and Capitant in their work *Derecho Civil,* vol. 4, p. 453, when referring to *sociedades* of lawyers, stated:

---

[7] Rule 33 of the Canons of Professional Ethics issued by the American Bar Association reads as follows:

"Partnerships among lawyers for the practice of their profession are very common and are not to be condemned. . . . Partnerships between lawyers and members of other professions or non-professional should not be formed or permitted where any part of the partnership's employment consists of the practice of law." 62 Reports of the American Bar Association 1105, 1117.

[8] See note 7, p. 6.

"Attorneys are not permitted to associate for the practice of their profession. The speculative character of this association would be opposed to the monopoly[9] granted by law to attorneys in consideration of their professional dignity.

"This question on the other hand does not seem to have ever been raised in continental France. In the Colonies and in Indo-China, especially, the work of the counsellors is often the subject matter of contracts of *sociedad*, and the validity of such a contract has never been questioned."

On the other hand, in the United States, where the concept of attorney at law is identical with that in Puerto Rico, the validity of the law firms has been upheld, even in those jurisdictions where the law firm is considered as an entity different from the members who compose it. *Warner & Post* v. *Griswold*, 8 Wend. 663, 11 N. Y. Common Law Reports 506, 507, cited in Ann. Cas. 1917 B, p. 16.[10]

The cases of *Chautauqua County Bank* v. *Risley*, 6 Hill 375, 16 N. Y. Common Law Reports 393 (1844), and *Diefendorf* v. *House*, 9 How. Pr. 243, invoked by the taxpayer and taken from an Annotation in 24 L.R.A. (N. S.) 750, 756, do not lend support to the contention of the taxpayer. In the first of them the attorney of record had left the State with the intention of settling elsewhere. After he left, his partner continued using his name. And the court held that an attorney who conducts a suit must reside within the State so

[9] It seems clear that if all the members are lawyers admitted to the bar no prejudice would be caused to the alleged monopoly granted to the attorneys.

[10] In addition to the case above cited, the following cases, from jurisdictions where the law firm is considered as an entity distinct from the members composing it, uphold the validity of that institution: *Davis* v. *Dodson*, 22 S. E. 645, 29 L. R. A. 496 (Ga., 1895); *Roth* v. *Boies*, 115 N. W. 930 (Iowa, 1908); *MacFarland* v. *Altschuler*, 108 N.W. 151 (Neb., 1906); *Gratwick* v. *Smith*, *supra*; *MacFarland* v. *Crary*, 8 Cowen 253, 9 N. Y. Common Law Reports 373 (1828); *Quintero* v. *Caffery*, 108 So. 87 (La., 1926); *Jones* v. *Caperton & Weeks*, 15 La. Ann. 475 (1860). These cases are cited exclusively to establish the validity of a law firm in those jurisdictions of the Common Law and Louisiana where the firm is considered an entity distinct from the members composing it. To the same effect see *McIver* v. *Clarke*, 69 Miss. 408, 10 So. 581 (1892), and *Harland* v. *Lilienthal*, *supra*.

16

that he can be subject to the jurisdiction of the court in case his client or the adverse party may file against him a complaint for malpractice.

In the second case it was held that if the attorney had become a nonresident, the service of papers on him was irregular and that his former partner could not act in his name.

It having been established that a law firm is legal and therefore within the provisions of § 2(a)(3) of the Income Tax Law, we shall pass to determine whether the taxp·yer Dubón & Ochoteco is entitled to make the deduction or the $22,814.14 for additional profits.

■ In pursuance of § 1572 of the Civil Code every partner is a debtor to the *sociedad* for whatever he has promised to contribute thereto. And in *F. Bacó Soria & Hno.* v. *Tax Court,* 64 P.R.R. 84, upon construing this provision of the Civil Code we stated that the partner owes to the *sociedad* his work and diligence, but only when he is a partner who is bound under the contract to render service, or when the partner having agreed to furnish capital under the partnership contract (*socio capitalista*) fails to do so. In a law firm every partner binds himself to contribute with his services, that is, his professional work, in exchange of which he receives the agreed share of the profits of the *sociedad*. I' being so, it is inconsistent with the contribution made by ·· attorney to the *sociedad* if, in addition to the benefit, he receives a salary, for upon contributing with his services to the *sociedad*, he is doing nothing more than what he bound himself to do under the contract and the provisions of § 1572. Of course, the partners may agree to a division of the benefits of the *sociedad* in the manner and in the proportion they please and as to that right the Treasurer can not interfere; but the net income of the *sociedad* as defined by the Income Tax Law is subject to the income tax and the right of the Treasurer to collect this tax may not be prejudiced by the agreement of the partners.

The taxpayer contends that the collection of a tax from a *sociedad* and from the partners individually, discriminates against the *sociedades* and in favor of the attorneys who practice their profession individually. As we have seen, in our law the *sociedad* is a person distinct from its members, and this being so, no constitutional principle prevents the Legislative Assembly from imposing a tax on the two classes of persons: the legal entity, and the natural persons constituting it.

In view of the fact that the benefits obtained by a law firm proceed exclusively from the personal work of the partners composing it, the income tax that the *sociedad* has to pay and the income tax that each one of the members has to pay, though legal, may be unfair to a certain extent; but the remedy does not lie in the courts, who can not pass upon the wisdom and propriety of the laws, but in the Legislature.

For the aforesaid reasons we reach the conclusion that, since the law firm Dubón & Ochoteco is covered by the provisions of § 2(a)(3) of the Law, it is bound to pay the income tax as any other *sociedad;* but since the partners are not entitled to receive a salary for the work rendered by them to the *sociedad* for the purpose of the deduction granted by Law, the Tax Court erred in granting the deduction of $22,814.14 for additional compensation. As to the salary of twelve thousand dollars agreed by the partners, the Treasurer accepted it as valid and it is not in controversy in this appeal.

The decision rendered by the Tax Court shall be annulled and the case remanded in order that another decision be rendered in consonance with the principles set forth in this opinion.